### BROWN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4580.

Circuit Court of Appeals, Third Circuit.
June 23, 1931.

Reynolds D. Brown, of Philadelphia, Pa., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and John H. McEvers and Sewall Key, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Robert L. Williams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This case is brought here upon petition for review of an order of redetermination entered by the Board of Tax Appeals.

Henry W. Brown on December 31, 1924, executed a deed of trust conveying and transferring a large part of his property to the Provident Trust Company and three of his sons as trustees. In the pertinent parts of the deed of trust, it was provided as follows:

"At the decease of the Settlor said Trustees shall pay over the capital or principal of said Trust as follows, to wit: * * *

"IX. The balance of the capital or principal of said Trust shall be distributed in such way or manner, and at such time or times, and in such proportions and upon such conditions as said Trustees or the survivors of them may, in the exercise of their sole and uncontrolled judgment, deem to be wise and best, bearing in mind the ideals of said Settlor with reference to the ownership of money and to the ideas on the general subject as expressed by him from time to time."

The settlor died on December 22, 1925. During his lifetime he had in mind and had expressed a desire to erect a church near his home upon property owned by him, as a memorial to his wife. The trustees had all been consulted and had taken part in conferences concerning the building of the church with the settlor and the rector of the church.

After the death of the settlor, the trustees spent the sum of $220,805.98 in cash plus the value of the land of the settlor necessary for the purpose, in erecting a Memorial Church of the Good Shepherd near the home of the decedent in memory of him and his wife. This was done in accordance with conclusions reached immediately after the settlor's death at a conference of the trustees with the rector and vestry of the church.

Reynolds D. Brown, as administrator of the estate of the decedent, claimed that the amount expended by the trustees for the erection of the church was deductible from the value of the gross estate ascertained under the provisions of section 301 and 302 of the Revenue Act of 1924 (26 USCA §§ 1092 note, 1093 note, 1094 note "as a transfer" under section 303 (a) (3) of that Act (26 USCA § 1095 note):

" * * * In contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. * * * "

The Commissioner of Internal Revenue refused to allow the deduction, whereupon an appeal was taken to the Board of Tax Appeals. The board, after taking testimony, decided against the appellant's contentions, and held that he was not entitled to such deduction in the calculations of the estate tax. The Board of Tax Appeals held that the language under which the discretion of the trustees was to be exercised was not such that a court could lay hold of and execute as a charitable trust. In their findings of facts and opinion, they state:

"The instrument before us contains nothing which would restrict the discretion of the trustees to any charitable trust. Testimony was received to show that the decedent in his lifetime had spoken of the erection of a memorial church. But whether this constituted one of his ideals as to the 'ownership of money' and was in line with his 'ideas on the general subject' is not shown by the evidence. What were the decedent's ideals as to the ownership of money and did the building of a church have anything to do with them? It is difficult to see the connection and in our opinion the evidence falls short of establishing it."

The first question to be determined is, What were the powers conferred upon the trustees? There can be no doubt that there was vested in them a very broad discretion, for the settlor directed distribution of the balance of the principal of the trust estate "in such way or manner and at such time or times and in such proportions and upon such conditions as the said trustees may in the exercise of their sole and uncontrolled judgment deem to be wise and best." Up to that point, there is nothing in the language indicating power of distribution to charities, but the settlor follows that by the language, "bearing in mind the ideals of said settlor with reference to the ownership of money and to the ideas on the general subject as expressed by him from time to time."

While that language is lacking in definiteness, it was for some one to determine what were the ideals of the settlor and what were his ideas on the general subject, as expressed by him from time to time. The trustees in the exercise of the power of appointment took into consideration what they knew were the ideals of the settlor and his ideas on the general subject. That knowledge was derived

from conversations of the settlor in his lifetime with the trustees and the rector of the church, and they applied it in determining, in the exercise of their sole and uncontrolled judgment, that the church should be erected in accordance with the settlor's wishes.

They reached their conclusion as to the settlor's intention from uncontradicted facts within their knowledge established through the testimony of witnesses called on behalf of the petitioner at the hearing before the Board of Tax Appeals upon December 9, 1929.

Rev. William Y. Edwards testified that he had been rector for over two years of the Memorial Church of the Good Shepherd, Germantown. That he knew the decedent, Henry W. Brown, who was not a communicant member of the church of the Good Shepherd, but lived about five minutes walk from the original location of that church. That, prior to the erection of the new church, it seated only eighty people, so that the congregation was crowded. He had about twelve talks with Henry W. Brown, beginning May 13, 1924, and ending December, 1925 (which was the month of the settlor's death). Such talks were generally, though not always, at the request of Henry W. Brown, who desired him to call and discuss the erection of a church in memory of his wife, on the Oak road. That topic was discussed during practically all of the dozen visits paid to Mr. Brown. On April 25, 1925, he took dinner at Mr. Brown's house with him and Reynolds D. Brown, the petitioner. Before dinner they looked at lots on the Oak road and then returned to dinner and discussed the possibility of erecting such a memorial church. There was no change in the settlor's attitude with reference to the possibility of building the church on the Oak road. It was quite definite that he wanted to erect such church in memory of his wife. During the last few months of his life, he was mentally unable, at times, to carry out definite plans or ideas.

The day after his death, Mr. Edwards called at his house and Henry I. Brown, one of the trustees, told him that his brothers and he intended to carry out their father's wish to erect a memorial church. About a week afterward, he met, at the settlor's house, the three sons and a committee of the vestry, and the question of getting the church presented to the vestry was discussed, and the location; and it was accepted and agreed upon. That shortly afterward, a lot was set apart, the architect chosen, plans submitted to the vestry, approved by them, and the work begun.

Henry I. Brown, one of the trustees and a son of the settlor, testified that the decedent talked of a number of things after his wife's death, having always in mind some memorial for her. That the last year or two before he died the only thing that he talked about was the memorial church on Oak road. This was the last thing he had in mind, and the only thing he had in mind to such an extent. After his death, the three sons never thought of anything else except this one particular thing as carrying out his particular wishes as they understood them. He recalled his saying that that was a matter in which he was interested, and it was the logical thing to do, and it was the thing he had in mind. The witness, who was a vestryman of the Church of the Good Shepherd, corroborated Mr. Edwards in the statement that the previous church was crowded and that, at the time of the decedent's death, it seemed to be the most logical thing in the world to carry out his wishes, not only in memory of the decedent's wife, but also to help the congregation in which he was so much interested. He corroborated Mr. Edwards' testimony as to the meeting at the decedent's house at which the trustees and the vestry were present, when the sons made a formal offer to present the church, and stated they thought it was decedent's wish, and that he would rather have them do it than anything else in the world.

Theodore E. Brown, one of the trustees, testified that for approximately two years previous to the decedent's death he spent a great deal of time at his father's house, and on numerous occasions his father discussed the building of a memorial, which became more gradually defined into the building of a church, with the lot in mind. That, if the church could be built, the decedent determined it should be built on Oak road. That decedent told him that he was planning to get hold of Mr. Edwards, the rector, for the purpose of discussing with him the practicability of getting a church on Oak road and replacing the smaller church. That the decedent told him that he had arrived at no definite conclusion as to the lot on which the church should be placed. That he was hoping to take up aggressively the building of a church when he got better, but he did not get better, and, therefore, did not take it up. After his death, the three brothers agreed that they would at once proceed with the building of a church, because it had been clearly stipulated by the decedent that a memorial should be built, and with that end

in view they called a meeting with the rector and the vestry for the purpose of going into details and to get down to just what kind of a church to build and where to build it. That the trustees agreed to set aside a sum of money sufficient to build the kind of church the decedent had in mind, adequate to hold a larger congregation than was possible in the old location.

On cross-examination, the witness testified that the three brothers acted in collaboration with the Provident Trust Company and were continually in contact with its representative. It was definitely fixed in his mind that the decedent had stipulated a memorial should be built. That he used the word "stipulated" meaning it was the decedent's desire, ambition, or intention.

Reynolds D. Brown, the petitioner, corroborated his brothers' and Mr. Edwards' testimony that about two years before decedent's death he talked to him, not once, but many times about his plan of building this memorial church on the Oak road. It was a favorite subject of discussion on the decedent's part after his wife's death. He remembered distinctly in April, 1925, when he and the decedent were talking about the matter and decedent asked him to call up Mr. Edwards and see whether he could come down and take supper and look at the lots, and "see if we can't reach a conclusion." The decedent spoke of the subject afterward, perhaps a dozen times between the spring in 1925 and his death in December. The decision to build a church was reached immediately after the decedent's death. There was never, from the first, any difference of opinion between the trustees as to the desirability or necessity, in order to perform their duties as trustees, of carrying out this plan. The witness testified to the meeting of the trustees with the rector and vestry at decedent's house with the result that the church was proceeded with and built.

Robert D. Geiger, assistant trust officer of the Provident Trust Company, testified that he was fairly familiar with the deed of trust and the things done by the trustees under the deed of trust. That he attended meetings of the trustees and the president of his company, and recalled the discussion with reference to the building of the church. That there was no difference of opinion between the trustees as to the importance of building the church, which was perfectly agreed to.

The testimony, which was uncontradicted, we deem amply sufficient to establish the fact that the building of the memorial church did constitute one of the settlor's ideals as to "the ownership of money," and that it was in line with his "ideas on the general subject." The officers of the Provident Trust Company, through which all of the business and dealings in connection with the settlor's estate were transacted, were familiar with the things done by the trustees under the deed of trust, with the terms of that trust, and Mr. Geiger attended meetings of the trustees with the president of the company and recalled the discussion with reference to the building of the church. Under the deed of trust, the trust company was custodian of the investments, securities, and properties of the trust. With knowledge of the ideals and ideas of the settlor, it could lawfully have refused to pay out or transfer the funds or property for other purposes, which would diminish the trust estate to an extent which would have prevented the settlor's purpose being carried out.

We think the Board of Tax Appeals was in error in holding that the appointment to the church, under the power vested in the trustees, was void for uncertainty. That conclusion is based upon the alleged ground that there is nothing whatever in the trust instrument to indicate any charitable intent on the part of the decedent. We deem it immaterial that clause IX does not specifically name charities, for there is in our judgment sufficient to show that the ideals of the settlor, with reference to the ownership of money and his ideas on the general subject as expressed by him from time to time, were those known by him to have been communicated in his lifetime to his sons, the trustees. Having knowledge of the ideals and ideas of the settlor, it was for them to determine from the facts within their knowledge what these ideals and ideas were and to make certain, in the exercise of their judgment, that they were putting them into effect.

The cases in Pennsylvania, the domicile of all the parties and the situs of the trust property, are thoroughly discussed by Mr. Chief Justice Mitchell in Dulles' Estate, 218 Pa. 162, 67 A. 49, 50, 12 L. R. A. (N. S.) 1177. In his opinion he said:

"Upon the question of want of certainty or definiteness the distinction between the purposes of any lawful trusts is not part of the ratio decidendi. The decisions rest on the maxim 'id certum est quod certum reddi potest,' and so long as there is a tribunal authorized, either expressly or by reasonable implication, to define and make certain the objects, the trust is not void for uncertainty.

It is not necessary that the courts unaided should be able to define the specific objects. It is sufficient if the general purpose is made clear enough for the court to perceive and prevent such a diversion as would be a fraud on the testator's intent. * * *

"The practical questions, therefore, in such cases are: First, is the testator's general intent ascertainable; and, second, is there any tribunal provided to ascertain the specific objects to which such intent is to be applied? If so, the trust is not void for uncertainty, whether it is for a technical charity or not."

In Beck's Appeal, 116 Pa. 547, 9 A. 942, the decedent's will provided, after the payment of legacies, bequests, and expenses:

"I do hereby give and grant unto my executor hereinafter named full and unlimited power and authority to appropriate or dispose of all the rest, residue, and remainder of my estate, real and personal, or the proceeds arising from the sale thereof, to such objects, persons, or institutions as in his discretion shall be best and proper, as I have full confidence in his judgment, ability, and integrity in the premises."

Judge Penrose, the auditing judge held, and was sustained in a per curiam by the Supreme Court:

"The power given was 'full and unlimited.' It was to 'appropriate or dispose' of the residue to such persons, objects or institutions as the executor should name. The gifts to the persons, objects or institutions thus selected were direct; and when the selection was made, they would take precisely as if the testator had himself made the selection, and their names had been set forth in the will."

In the instant case, the tribunal, authorized expressly to define and make certain the objects, consisted of the trustees. They had the broad power of appointment under the will in the exercise of their sole and uncontrolled judgment in what they deemed to be wise and best, bearing in mind the ideals of the settlor with reference to the ownership of money and to the ideas on the general subject as expressed by him from time to time. Those ideas and ideals being known to them at the time the trust deed became effective,

were valid for the purpose to which the power was applied, and had precisely the same effect as if they had been made directly by the settlor in the deed of trust.

It is contended, however, by the Commissioner of Internal Revenue that the appointment under the power was void because contingent and, therefore, under the authority of Humes v. United States, 276 U. S. 487, 48 S. Ct. 347, 72 L. Ed. 667, was not deductible. This contention is based upon the terms of the trust deed which leave the disposition of the trust estate subject to the uncontrolled judgment of what the trustees deem to be wise and best, etc.

■■ But where a power of appointment is discretionary, the power being exercised relates back to the period of time of the settlement of the power. That is, in this case, to the date of the testator's death. Therefore, when the power was once exercised, the church took the gift from the settlor, the creator of the power, and not from the trustees themselves, for the reason that the deed created no estate in any one except through the exercise of the power to appoint under the terms of the deed. The tribunal, authorized to appoint, having exercised the power, their act relates back to the settlor and the estate passed from him, as the creator of the power, and not from the trustees. Beck's Appeal, supra.

We conclude that the Board of Tax Appeals was in error in disallowing the deductions claimed by the petitioner of the amount expended and the value of the land conveyed by the trustees under the power contained in the deed of trust in and about the erection and construction of "the Memorial Church of the Good Shepherd, Germantown."

As to the finding of deficiency in the estate tax imposed on the money so expended and land so conveyed, the order and decision of the Board of Tax Appeals is reversed.

There was no evidence that other gifts made by the trustees for religious or charitable purposes were intended by the settlor to be within the terms of the power of appointment. Therefore, in all other respects the order and decision of the board is affirmed.