NORRIS et al. v. COMMISSIONER OF
INTERNAL REVENUE.

No. 8062.

Circuit Court of Appeals, Seventh Circuit.
April 8, 1943.

Rehearing Denied May 10, 1943.

Perry J. Stearns, of Milwaukee, Wis., for petitioners.

Samuel O. Clark, Jr., John E. Garvey, Sewall Key, and Alvin J. Rockwell, Dept. of Justice, and J. P. Wenchel and Ralph F. Staubly, Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Fannie W. Norris of Milwaukee, Wisconsin, died testate. By her will, she gave to charity generously, to many long-time employees, and to many old friends and distant relatives. She named two trustees (one, her son) who were "authorized and empowered" to name charitable associations and institutions which would receive her charitable gifts. She also authorized the said trustees to determine the amounts so to be given.

The deductibility, for Federal estate tax purposes, of sums devoted to charity, by said testamentary trustees, is the sole issue raised on this appeal. The trustees exercised their "discretion" before they filed the estate tax return. They made a $5,000 gift to the Columbia Hospital in Milwaukee. They also made a $284,341.10 gift to the Norris Foundation, a Wisconsin charitable corporation. Both gifts were, fully executed.

There is no question but that these donations were to charities, such as come within the exemption provisions of the Federal Statute. Sec. 303(a) (2) (3). Petitioners attempted to deduct these sums when making their tax returns, but the respondent rejected them. A deficiency tax of $68,-294.81 was assessed. The contest here is over propriety of this assessment.

On appeal the United States Tax Court held these gifts could not be excluded from testatrix' taxable estate.

This ruling was based on the assumption that the charitable gifts were *not absolute* at the *death* of the testatrix, but were completely *contingent*, upon the exercise thereafter, of the trustees' *"discretion."* They were therefore covered by the Regulations which deny deductibility of contingent charitable bequests.

Sec. 303 (a) (3), Revenue Act of 1926, as amended, 26 U.S.C.A.Int.Rev.Acts, pages 232, 235, and Regulations 80, Articles 44 and 47, are here set forth:

"[Sec. 303 (a) (3)] For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

\* \* \* \* \* \*

"(3) The amount of all bequests, legacies, devises, or transfers, \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. \* \* \*"

Regulations No. 80 of Treasury Department contain two Articles which must be considered.

"Art. 44. *Transfers for public, charitable, religious, etc., uses.*—Deduction may be taken of the value of all property transferred by will \* \* \* not to exceed the value of the transferred property required to be included in the gross estate if \* \* \* the property was transferred \* \* \* (2) to or for the use of any corporation or association organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*; or (3) to a trustee or trustees, \* \* \* if such transfers, legacies, bequests or devises are to be used by such trustee [or] trustees, \* \* \* exclusively for religious, charitable, scientific, literary or educational purposes, \* \* \*."

798

"Art. 47. *Conditional bequests.*—If the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event *shall have taken place* before the deduction can be allowed.

"If the legatee, devisee, donee, or trustee is empowered *to divert* the property or fund, in whole or in part, *to a use* or purpose *which would have rendered it,* to the extent that it is subject to such power, *not deductible had it been directly so bequeathed,* devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

Stating the facts which supply the background of this controversy, briefly, it may be said,—

Mrs. Norris, who died in '37, in her long will, provided for the payment of many specific legacies and also for the payment of income during the life of the annuitants to many other named beneficiaries. She also made numerous gifts conditional on the survival of the legatees and in some instances the duration of gifts in trust depended upon the survival of other than the first-named legatee.

There were two paragraphs of her will, (R) and (T), herewith set forth, which are largely determinative of the appeal.

"Item Eighteen: All the rest, residue and remainder of my estate, * * *, I give, devise and bequeath unto my trustees hereinafter named, the survivor of them and their successors, in trust, to have and to hold the same during the continuance of the lives of—my son, Daniel Wells Norris, Francis D. Weeks, Mabel F. La Croix, Helen Bradley and Elizabeth Durham, all of whom are named and identified in this will, and the survivors and survivor of them, and thirty (30) years after the death of such survivor."

"(R) If and when said Trustees are satisfied that they shall have in their possession trust property more than sufficient to meet in full all the previous requirements of my will, then I direct said trustees to pay out of the principal of the trust property in their possession to Columbia Hospital of Milwaukee, Wisconsin, * * * a sum not exceeding * * * $5,000 * * *."

"(T) After my trustees have paid to Columbia Hospital the sum of not exceeding * * * $5,000 * * * as set forth above, I authorize and empower them whenever and as often as they are satisfied that they have in their hands ample funds to fulfill all the requirements of my said will, *at their discretion and option,* to pay to any worthy charitable, religious or educational corporation, association or enterprise, operating in the city of Milwaukee, Wisconsin, such sums of money out of the principal in their hands as they may deem best, with the suggestion which is not mandatory, that the enterprises which I have been interested in be given the preference."

Petitioners contend that the bequests provided in these paragraphs are absolute gifts to charity, notwithstanding the amount, in each instance, as well as the designation of the charity in the latter, was left to the trustees. The amount of such gifts was left to them, because such amounts, available for charity, could not be, and were not, known to the testatrix. The lives of some gifts were dependent upon the life of another legatee, and others upon the contingency of a named legatee's surviving the testatrix. This necessarily made the amount available for charity dependent upon the uncertainty of human lives. Moreover, the rate of return was unknown, and the amount paid as taxes, had a bearing on the size of the net estate. The tax issue in this case is an illustration of this latter uncertainty. These doubts and problems made gifts of fixed sums to charities difficult, if not impossible.

Petitioners also contend that the making of the gift through the selection of trustees to designate the charities which were to receive the estate did not make the gift contingent. It is argued that the gift to charity was absolute, even though the beneficiaries were not named, and the amount each was to receive was left to trustees, in whose judgment the testatrix had great confidence. Their judgment, so she probably thought, could be more wisely exercised than hers, after they learned the amounts of the net estate and the net income.

■ On numerous occasions courts have expressed the opinion that Congress in enacting this legislation sought to encourage gifts to charity,[1] by the charitably inclined. "Congress was thus looking at the subject from the standpoint of the tes-

---

[1] Y. M. C. A. v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558.

The first paragraph of Article 47 of Regulations 80 provides that if a transfer to charity is dependent upon a precedent event, it is necessary that such precedent event *"shall have taken place before the deduction can be allowed."* It does not say when the event must have occurred—whether before testator's death or at some specific time thereafter. If paragraph one were all there were to the Article, it might be readily construed to permit a deduction in this case, on the interpretation that, since the event (the two gifts above named) had actually taken place before the filing of the return, there was that degree of certainty essential to a correct determination of the tax due.

■ As has often been said, taxation is a practical matter. Therefore, the tax must be levied on a known basis [2]—such basis may not be variable, dependent on factors unknown or unknowable at the time the tax is levied. In the instant case, the definite facts were ascertained at the time the return was filed. Charity profited richly, as both testatrix and the legislators desired. Yet, because it was the holders of the power delegated by the decedent who determined the exact amount of the beneficence, and named the beneficiary, decedent's estate is denied the reward which Mrs. Norris' charity otherwise would have earned.

In the instant case it is highly probable that the decedent herself would have designated the same beneficiaries and in as handsome amounts, if she felt herself more able to forecast the exact resources of her estate at the unknowable time when she would die. The gifts were to: one, a beneficiary by her specifically mentioned in her will, and the other, to her family charitable foundation.

It is understandable why the Commissioner, in his Regulations, sought to achieve absolute certainty in prescribing allowable deductions for charitable gifts. He sought certainty. The first paragraph of Article 47, if construed to permit deductions for gifts, *ascertained to be definite before levy of tax,* would be a most sound and practical administrative interpretation of the Act. It would make for definiteness in tax assessments.

Yet petitioners' construction of paragraph one brings us in direct collision with paragraph two of Article 47, which states that if a donee or trustee is empowered to divert the property to a recipient, a direct gift to whom, by the decedent, would not have been deductible, it shall be deemed nondeductible.

A careful reading of this second paragraph of Article 47 would indicate it meant to cover specific charitable bequests made by the decedent, but subject to be defeated by the trustee.[3]

A strict construction of paragraph 2 does not make it applicable to the instant case because here the transfer of the residue was to trustees, of funds to be administered as they directed. There was no power of *"diversion"* of the fund from a testamentarily designated deductible bequest to a nonde-

---

tator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him: 'If you will make such gifts, we'll reduce your death duties and measure them, not by your whole estate, but by that amount, less what you give.' "

See, also, Knoernschild v. Com'r, 7 Cir., 97 F.2d 213; Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564.

United States v. Provident Trust Co., 291 U.S. 272, 285, 54 S.Ct. 389, 392, 78 L.Ed. 793.

"We have for consideration simply a statutory provision exempting * * * value of all bequests * * * to * * * charitable organizations * * * plainly evincing a legislative policy to encourage such bequests * * * and, in that view, we well may assume that Congress could not have meant to leave its aim to be diverted by a purely arbitrary presumption, which, whether applicable or not to sustain another or different policy, would deny the truth and subvert the policy of this particular legislation."

[2] Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564, "It levies a sum equal to a certain percentage of the value of the net estate, and provides the criteria by which the net estate shall be ascertained. It thus manifestly assumes that *the net estate will be ascertained before the tax is computed.*"

[3] Such a provision may be wise and in fact necessary to prevent reduction of estates by charitable contributions, which, after levy and payment of estate tax, are cancelled by exercise of testamentarily given power.

ductible bequest, but rather a choice between different beneficiaries of a designated class (Milwaukee "charitable, religious or educational association") to be made by the trustees.

Similar questions have been presented to various courts. Differences may be, in part at least, traced to narrow differences in the language of the testamentary bequests.

This court dealt with this statutory provision in the case of Knoernschild v. Commissioner, 7 Cir., 1938, 97 F.2d 213, 215, wherein decedent provided that part of his estate, on the death of a daughter, should go to the Academy where said daughter was a nun, but if she, or his trustees, deemed it advisable, her share might be paid before her death, to the Academy or to provide for her mother, sisters or brothers if they were in financial need. This court refused to allow a deduction, stating:

"In other words, the right extended to her to divert any or all of the funds to the financial aid of a number of other persons is so wide and so broad as to make possible the entire destruction of the corpus of the estate passing to the Academy. The gift is conditional, revocable and not final and conclusive in its terms. * * *

"Inasmuch as the decedent made no absolute bequest to the Academy but rather gave to it the corpus of the estate with the provision that the fund might be entirely diverted, the character from which exemption emanates was non-existent."

The decision of the Board of Tax Appeals in that case stated: "Since the decedent made no absolute bequest to Holy Angels Academy, and *since the Board is unable to determine what, if any, portion of the fund set up representing the daughter Marie's share of the estate will ever go to the Holy Angels Academy*, it is held that no part of the fund is a legal deduction from the gross estate."

In Davison v. Commissioner, 2 Cir., 81 F.2d 16, 18, the court said: "It may well be that a renunciation of the power of appointment would for some purposes relate back to the date of the death of the original testator. But we cannot believe that a right to appoint which inhered in the donee of the power for six years before it was formally renounced and which, if exercised, would have terminated the charitable bequests in remainder, may, by applying the legal fiction of 'relation,' be treated as though it had never existed. The *practical*

*certainty required in order to justify the deductions* of bequests to charity under section 303 (a) (3) is not to be satisfied in such an unreal way."

In Gammons v. Hassett, 1 Cir., 121 F.2d 229, 231, the court said: "The rule is now well established that a deduction for a charitable gift will be allowed only if the value of the charitable gift can be ascertained definitely at the date of the testator's death."

The case of Brown v. Commissioner, 3 Cir., 50 F.2d 842, 846, is in point for petitioners. There it is said:

"But where a power of appointment is discretionary, the power being exercised relates back to the period of time of the settlement of the power. That is, in this case, to the date of the testator's death. Therefore, when the power was once exercised, the church took the gift from the settlor, the creator of the power, and not from the trustees themselves, for the reason that the deed created no estate in any one except through the exercise of the power to appoint under the terms of the deed. The tribunal, authorized to appoint, having exercised the power, their act relates back to the settlor and the estate passed from him, as the creator of the power, and not from the trustees. * * *

"We conclude the Board of Tax Appeals was in error in disallowing the deductions claimed by the petitioner of the amount expended and the value of the land conveyed by the trustees under the power contained in the deed of trust in and about the erection and construction of [church] * * *." See, also, United States v. Fourth Nat. Bank in Wichita, Kan., 10 Cir., 83 F.2d 85, 107 A.L.R. 793; Mead v. Welch, 9 Cir., 95 F.2d 617; Schoenheit v. Lucas, 4 Cir., 44 F.2d 476; Levey v. Smith, 7 Cir., 103 F.2d 643; Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; United States v. Provident Trust Co., 291 U.S. 272, 54 S. Ct. 389, 78 L.Ed. 793; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825; Mississippi Valley Trust Co. v. Com'r, 8 Cir., 72 F.2d 197.

We find an interesting discussion of the problem in "Federal Death Tax," by Attorney John E. Hughes. He states:

"Sec. 141. At the present writing the weight of authority is that if the bequest

to charity is based on a condition not shown to have been fulfilled at the donor's death, the bequest is not deductible although the conditions were subsequently fulfilled. * * *

"The words of the law plainly allow a deduction for 'the amount of all bequests, legacies, devises or transfers to or for the use of' the designated purposes. The law says nothing about contingent bequests. * * *

"It has heretofore been pointed out, however, that if a will is modified by agreement of the parties to allow for the payment of a bequest to charity, then the will, as so modified, is considered to have been the will originally probated and the deduction is allowable.

"*It is the opinion of the author the rule should be that if at the time of the ascertainment of the tax, the condition has been complied with, then the bequest should be deductible, otherwise not.* Involved in this problem is the question of how far events subsequent to death may be looked to that are material in determining an estate tax. Certainly they cannot all be left out of consideration, such as the subsequent construction of a will by a state court. * * * Indeed, since 1935 the statute itself provides that events expiring within one year of death may at the election of executor be used in making valuation. *The establishment of the rule herein advocated will result in the allowance of a deduction obviously within the spirit of the beneficent legislation and in the accomplishment of substantial justice.*

"* * * The article of the Regulations above quoted has been the same in prior regulations. Revenue acts have been subsequently enacted and the doctrine of legislative approval is applicable here. This renders doubtful the correctness of the conclusion reached in the cases cited (in the footnote) and *makes it probable that the Supreme Court, when it considers the matter, may overrule them.*"

■ It is clear, we think, from a reading of these decisions and of Sec. 303 (a) (3) that Congress intended to reduce the basis of Federal estate tax by such amounts as were given to charity. We believe also that the congressional intent was to prefer charity gifts to estate taxes. It was a case of absolute priority. This legislative intent should not be whittled down by judicial construction. If courts are to respect this legislative expressed intent to encourage gifts to charity, we should not approve of the practice of the Commissioner of resolving doubts in favor of the Government.

On the other hand, loopholes should not be permitted to diminish estate tax payments by ostensibly charitable bequests which may never become effective. Also the necessity of easy, accurate determination of the precise tax due from the estate is of importance. Gifts to charity of uncertain nature and speculative value will not be permitted to impede the exact determination of the base upon which the tax is imposed.

Neither objection—to-wit, uncertainty or possible avoidance of the charitable bequest—is here present. The only serious objection is that the testatrix' gifts to charity are not absolute. They did not pass directly from the testatrix to the charity. The necessity (or contingency) of action by the trustees was present.

■ The law of Wisconsin governs the construction of this will. The Federal law governs as to the construction and the application of the Federal tax statute, to the estate, the nature and character of which has been fixed by Wisconsin law. Blair v. Commissioner, 300 U.S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465.

In other words, the Federal statute grants and defines its gift exemptions. It could have excluded all gifts. It could and did define the gifts it exempted from Federal Estate Taxes. Those exemptions thus specified, may not be broadened by Wisconsin decisions.

While we must look to the Federal statute to ascertain the estates which are exempted from taxation, it is the local law which determines the character and nature of the estate which the will creates.[4]

What is the Wisconsin law as to the character and nature of testamentary gifts where the issue involves, and turns upon, the existence of an alleged mandatory trust? In other words, did Mrs. Norris, by her will, under the Wisconsin cases, create a mandatory or a precatory trust? Could the trustees, under the language of the will, refuse to convey the property of the testatrix to charity? Or, stated in a different way, were they subject to judicial compulsion to make a disposition of the "trust

---

[4] Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

property" to Milwaukee charities, under this will?

No Wisconsin court was ever called upon to construe this will or define this trust. The action of the trustees in promptly transferring funds to the Milwaukee charities, left no issue over the *mandatory* character of the trust, for determination. To the trustees, there never was doubt as to Mrs. Norris' wishes, or their duty. Filial respect for the mother's wishes may have influenced prompt and decisive action by one trustee. But the fact remains that the trustees seemingly viewed the trust as one clearly requiring them to make disposition of the bequest to Milwaukee charities.

■■ However, as we read the Wisconsin decisions, in the light of which we must construe this gift, we find them no different from the decisions of other courts, construing somewhat similar charitable bequests. In fact, the law of Wisconsin, and many other states, is well stated by Prof. Bogert, in his work on Trusts and Trustees, vol. 2, § 324, page 1030; see also Scott, on Trusts, Sec. 25, and Sec. 351; also the Restatement of the Law of Trusts, Sec. 25, and Sec. 351.

Three Wisconsin decisions have construed wills and determined whether a trust in a given case was precatory or mandatory. They are: In re Will of Doe, 192 Wis. 333, 212 N.W. 781; In re Will of Doe, 232 Wis. 34, 285 N.W. 764, 126 A.L.R. 926; and In re Will of Platt, 205 Wis. 290, 237 N.W. 109.

Prof. Bogert states the rule, which expresses the consensus of judicial opinion, as set forth in the footnote.[5]

■ This court, though divided, is of the opinion that Mrs. Norris failed to provide

---

[5] 2 Bogert, Trusts and Trustees, § 324, page 1030:

"The alleged trust intent may be couched in words of request, suggestion, or entreaty only, that is the language may be 'precatory.' There do not seem to be any peculiar rules of construction applicable to precatory charitable trusts only. The court will examine carefully all the clauses of the instrument and the situation of the parties, in order to decide whether the precatory phrases are intended to be binding upon the donee and make him trustee of a charity, or whether he is to be an absolute owner with certain moral obligations by reason of the suggestions or requests from the donor as to the use of the property given."

1 Bogert, Trusts and Trustees, § 48, page 223:

"The cases in which greatest difficulty arises in discovering whether a property owner intended a trust to be created are those in which he uses 'precatory expressions.' Precatory expressions are 'words of entreaty, request, wish, or recommendation.' * * * 'The primary question in every case is the intention of the testator, and whether in the use of precatory words he meant merely to advise or influence the discretion of the devisee, or himself to control or direct the disposition intended.' "

Id., page 225:

"The particular words used will be of little assistance in guiding the searcher to a discovery of the intent. Thus the words 'desire,' 'request,' 'wish,' 'hope,' 'recommend,' 'in confidence that,' and 'rely,' have been held in some instances to create trusts, and in others to be of no legal effect. * * * In the first place, a failure on the part of the settlor definitely to describe the subject-matter of the supposed trust or the beneficiaries or objects thereof is strong evidence that he intended no trust. Unless these elements, namely subject and object, are definite, the trust will be unenforceable, even if it could come into being."

Scott states the rule (Sec. 25) as follows:

Sec. 25. " * * * Under the modern cases the question is: Did the testator not only desire that the legatee should make a particular disposition of the property, but did he intend to impose a *legal obligation* upon him to make the disposition?

" * * * Where a testator uses language expressive of desire rather than of command, the question in each case is whether he intended to impose a legal duty upon the legatee to carry out the desired purpose, or whether he intended to leave the legatee free to carry it out or not as he should choose, even though the testator hoped that he would carry it out. In each case, in reaching its determination, the court will examine the whole of the will, and examine it in the light of all the circumstances."

The Restatement of the Law of Trust provides:

Sec. 25. "No trust is created unless the settlor manifests an intention to impose enforceable duties."

Sec. 351. "A charitable trust is created only if the settlor properly manifests an intention to create a charitable trust."

in her will for a trust fund which was exempt from taxation.

In reaching this conclusion, as to which, one member of the court cannot agree, the persuasive factors determinative of the result are: (1) No amounts were specified by testatrix; (2) No charity was named; (3) The language of the will (T) above-quoted, "at their discretion and option" negatives the basis upon which a gift is necessarily dependent.

The third reason is the one upon which the determination of the case largely turns. The precatory language of the will in other places, might have saved the bequest, but for this language of paragraph T of the will. These words, "at their discretion and option" define, in the opinion of the majority of the court, the character of the gift. Giving these words their only legitimate meaning, there is no justification for our stressing the meaning of the other words used in the same paragraph, to-wit, "authorize and empower." It is impossible to neutralize the last words used by the testatrix in this paragraph and convert a kindly wish into a mandatory trust. The testatrix was not satisfied to confine her expressed intention to the word, "discretion." With it, and with the conjunctive "and" she further limited the inchoate gift by the word, "option." Is a gift to charity mandatory if the trustees have a discretion to make the gift? Perhaps more persuasive is the test—Is there an absolute gift to charity when the trustees have the option to execute or not execute the testatrix' request?

It is impossible to make conclusive deductions from the fact that Sec. 303 (a) (3) was amended in 1942, § 408 (a), 26 U.S.C.A.Int.Rev.Code, § 812(d). It may well be argued that the amendment was to clarify and make certain what had become cloudy by reason of the Regulations. On the other hand, it may have been enacted to evidence a change in the law,—a change favorable to contingent gifts such as Mrs. Norris', which lost their contingency by action on the part of the trustees before the estate tax was payable. In other words, it may be argued that the gifts to charity deductions were not sufficiently recognized by the existing act, and wider play was given to the Congressional policy through this 1942 amendment. We are inclined to the view that the amendment was to avoid controversy and to make it clear that Congress desired no obstacles placed in the path of the charitably inclined. It dealt with the future—did not affect wills or trust agreements which became effective before its enactment. It has no significance in this case.

The "not exceeding five thousand dollar" legacy to the Columbia Hospital of Milwaukee requires no specific consideration. We are of the opinion that this legacy, which the trustees paid to the Columbia Hospital, was not exempt because of the words *"not exceeding"*. It was absolute and mandatory, but for no more than one cent. The majority of the Court so hold.

The order of the United States Tax Court is affirmed.