**STATE STREET BANK AND TRUST et al., Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 80–1386.**

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1980.

Decided Nov. 5, 1980.

---

Richard C. Bishop, Greenfield, Mass., with whom Levy, Winer, Hodos & Berson, P.C., Greenfield, Mass., was on brief, for plaintiffs, appellants.

Robert S. Pomerance, Atty., Tax Division, Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup and Daniel F. Ross, Attys., Tax Division, Dept. of Justice, Washington, D. C., were on brief, for defendant, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and CAFFREY,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from a judgment of the district court sustaining the Commissioner's disallowance of an estate tax charitable deduction claimed by the estate of Leah B. Cline under section 2055 of the Internal Revenue Code of 1954. At issue is whether, under circumstances existing at decedent's death, payment by a trust of the charitable bequests in decedent's will was a discretionary act or whether, instead, payment was so mandated that the possibility of nonpayment was a negligible contingency.

On March 24, 1967, the decedent, Leah B. Cline, executed both a will and a revocable trust agreement, naming State Street Bank and Trust Co. co–executor of the former and sole trustee of the latter. The will made various bequests, including a total of $56,500 in bequests to fourteen named charitable organizations. The residue of the estate was to be divided in specified shares among several relatives. The trust reserved for the decedent a lifetime right to trust income and so much of the principal as she might request; it also permitted the trustee to pay income or principal to her or for her benefit in the event she became incapacitated. Upon her death, the trustee was authorized to pay any debts, expenses, or death taxes of the decedent or her estate, and to pay any legacies included in the decedent's will as probated. After these payments, if any, were made, the trust remainder was to be divided in the same manner as was set out in the will with respect to the residuary estate.[1]

Sometime after these two documents were executed, decedent transferred most of her assets to the revocable trust. As a result, decedent's probate estate was virtually insolvent at the time of her death, December 22, 1971. The trustee and co–executor, State Street Bank, therefore exercised its power under Article II of the Trust Agreement to pay $56,500 out of trust assets to the named charities. The estate then claimed a charitable deduction for these payments under I.R.C. section 2055.

The Commissioner disallowed the deduction on the basis of Treasury Regulation 20.2055–2(b), which reads in pertinent part as follows:

"(b) *Transfers subject to a condition or a power.* ˙(1) If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible."[2]

---

* Of the District of Massachusetts, sitting by designation.

1. Article II, paragraph B, of the trust instrument, governing distribution of the trust assets after the settlor's death, provides in relevant part:

"B. Upon the death of the Settlor, the Trustee shall dispose of the then principal of the trust estate, including any undistributed net income, in the following manner:

1. The Trustee is authorized to pay any debts of the Settlor, expenses of last illness, funeral expenses or administration expenses incurred in connection with the settlement of the Settlor's estate.

2. The Trustee is further authorized to pay any Federal estate or death taxes levied by the Federal Government that may be due upon or in connection with the death of the Settlor, providing same shall be caused by property included within this trust estate, or by property included in the Settlor's probate estate.

3. Upon the allowance of the Settlor's last will by the probate court wherein such will shall be probated, the Trustee is authorized to pay any legacies that may be included therein.

4. In exercising the discretion given in the foregoing subparagraphs 1, 2 and 3, the trustee may consider the assets of the Settlor's estate and shall, in its absolute discretion, determine whether any such payment shall be made from the assets of this trust.

5. After the foregoing payments, if any, are made or otherwise provided for, the Trustee shall divide the remaining trust estate into twelve (12) equal shares and distribute them as follows . . . ."

2. The regulation continues:

"If an estate or interest has passed to, or is vested in, charity at the time of a decedent's

The Commissioner found that the payments to the charities had been made in the trustee's discretion, and that there existed at the time of decedent's death more than a negligible possibility that the trustee would exercise its discretion to prevent the transfer of trust funds to the charities. Appellants do not contest the materiality of the regulation,[3] but maintain that, under the circumstances existing as of the date of decedent's death, the possibility that the charitable transfer would not become effective was so remote as to be negligible.

The relevant trust provisions are those in subparagraphs 3 and 4, see note 1, supra. Subparagraph 3 provides that the trustee "is authorized to pay" any legacies in the settlor's will. Subparagraph 4 provides,

"In exercising the discretion given in the foregoing subparagraphs 1, 2, and 3, the Trustee may consider the assets of the Settlor's estate and shall, in its absolute discretion, determine whether any such payment shall be made from the assets of this trust."

Finally, subparagraph 5 calls for distribution of the remaining trust estate "[a]fter the foregoing payments, if any, are made . . . ."

Despite this language, appellants contend that the trustee had no real discretion at decedent's death to decide whether to pay the charities. They argue that the decedent had made clear her intent to make the charitable gifts–through execution of the will and accompanying trust, through conversations with an officer of the trustee bank at the time the instruments were drawn, and through a lifelong plan of charitable giving, of which the legacies in the will were the final installment.

The will itself delineates the terms and nature of the charitable bequests in great specificity and detail. It is evident that careful thought and planning went into making them. For example, the largest single gift, $30,000, is made to Brandeis University

"to create a perpetual scholarship to be known as the Harry and Leah B. Cline Memorial Scholarship. Said bequest is on condition that the income, and only the income thereof, be used to grant an annual scholarship to a graduating senior student accepted to an accredited medical school, said award to be in the sole discretion of the Scholarship Committee of said University."

Another gift is made to furnish a hospital room previously donated by decedent and her husband, and the following phrase appears after eleven of the bequests: "These donations are made to carry out a plan which my late husband, Harry Cline, and I have had for many years."

Appellants also point to the uncontested affidavit filed in support of their cross–motion for summary judgment by Paul F. Butler, the former Vice President in charge of the Tax Department at State Street Bank. Mr. Butler relates that he was introduced to the decedent by her nephew, a practicing attorney, for the purpose of discussing the creation of an inter vivos trust and accompanying will "so that she would have some management of her portfolio and to relieve her of current responsibilities." They discussed the terms of the trust and accompanying will, and reviewed the charitable bequests named therein. Mr. Butler did "not recall any mention of discretion on the

death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power."

3. The Supreme Court has endorsed the virtually identical regulation which interpreted the former version of the estate tax charitable deduction, section 812(d) of the Internal Revenue Code of 1939. Commissioner v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

part of the trustees [sic] with respect to permitting the trustees [sic] to decide which charities would receive legacies or whether any would be paid. If the trustees [sic] had any discretion, it would be to decide whether to use trust funds or estate funds to pay the charities, not whether they would be paid." He goes on to state that in his trust career of thirty years he did "not recall a professional trustee being given such discretion" and that he "doubt[s] that a professional trustee would want the discretion . . . ." It was his "clear impression that Mrs. Cline had a long history of charitable giving and that it was her intent to complete this through the bequests made in her will."

■ Given the above, appellants contend, a professional trustee would have felt obliged to pay the charities when the estate had insufficient funds to do so. Appellants contend further that, under Massachusetts law,[4] it would have been a breach of fiduciary duty had the trustee elected not to pay the charities. We agree.

■ In recent decisions, the Supreme Judicial Court of Massachusetts has held that trustees are restricted in the exercise of broadly phrased discretionary powers by the terms of the trust viewed as a whole and by fiduciary duty.[5] In *Worcester County National Bank v. King*, 359 Mass. 231, 268 N.E.2d 838 (1971), the issue was whether a provision empowering the trustee to determine, "notwithstanding any rule of law applicable thereto," what receipts or disbursements should be charged or credited to principal or to income rendered the trust's charitable remainder interest "not presently ascertainable" for purposes of I.R.C. section 2055. The court held that the clause simply authorized the trustee "to use its best informed judgment in good faith in light of what the established rules suggest to the trustee is consistent therewith," and that the power "may not be used to shift beneficial interests." The court concluded that the "supervision which Massachusetts courts sitting in equity will exercise over trusts containing broadly phrased clauses relative to a trustee's administrative or management powers" would restrain exercise of the trustee's discretion sufficiently to make the remainder interest certain and ascertainable for federal tax purposes.

*Woodberry v. Bunker*, 359 Mass. 239, 268 N.E.2d 841 (1971), also concerned the applicability of the section 2055 deduction to a charitable remainder interest. Under the terms of the trust, the trustees could invade such parts of trust principal as in their opinion were needed for the life beneficiaries' "comfortable support, medical or nursing care, *or other purposes which seem wise to my Trustees.*" (Emphasis added.) The court held that despite the seemingly open-ended power of invasion conferred by the italicized clause, the trustees were required to act "in good faith" within the limitation implied by the trust instrument as a whole that trust principal not be invaded unless necessary to maintain the beneficiaries

---

4. In matters of federal taxation dependent upon state law principles, federal courts are bound by decisions of the highest state court. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

5. Citing *Delaney v. Gardner*, 204 F.2d 855 (1st Cir. 1953), appellee argues that the charitable deduction does not apply here even if the Massachusetts courts would have forced the trustee to transfer the funds to the charities. We disagree with this characterization of *Delaney*. In *Delaney*, the testatrix left $100,000 to her executors, "not subject to any trust," following assurances by the executors that they would dispose of the assets as she would indicate in a forthcoming memorandum. In the memorandum the testatrix specified various gifts to persons and institutions, including religious and charitable organizations. This court held that, although a "constructive trust" would be impressed on the assets compelling transfer of the funds to the recipients named in the memorandum, the estate tax charitable deduction was unavailable because the funds would not pass to the charities under the terms of a testamentary instrument.

Here, appellants do not argue that a "constructive trust" was imposed, but rather that the terms of an actual trust should be interpreted, in light of fiduciary principles and the settlor's intentions, as severely limited in the scope of discretion conferred upon the trustee. The payments to the charities, whether mandatory or discretionary, were clearly made under the express terms of the will and trust.

within the standard of living to which they were accustomed prior to the settlor's death. *See also Dana v. Gring*, 374 Mass. 109, 371 N.E.2d 755 (1977).

█ While there are factual differences between these cases and the one at hand, *Worcester County* and *Woodberry* indicate that the provisions of a trust must be interpreted not by focusing narrowly on a particular phrase or clause but rather by looking at the instrument as a whole in light of the relevant circumstances—which here included the settlor's contemporaneous execution of an interrelated will and the various other manifestations of the settlor's intentions, *see Persky v. Hutner*, 369 Mass. 7, 336 N.E.2d 865 (1975). So construing this trust, we conclude that under the circumstances existing at decedent's death the trustee would not have been permitted by a Massachusetts court of equity to decline to make funds available to pay the charitable bequests in question.

The record discloses no conceivable rational justification that the trustee might have advanced for refusal to pay the charitable legacies, nor can we think of any. It was clear that Mrs. Cline wished to leave the specified sums to charity and that the trust had assets to do so.[6] We think it unreasonable to read the discretionary language in the trust instrument as empowering the State Street Bank, a corporate trustee, introduced to decedent by her lawyer nephew shortly before her death to provide

"some management of her portfolio," to decide on the basis of its own subjective preference whether or not to carry out decedent's wish to benefit the named charities in the sums specified in her will.[7] In contrast, *Norris v. Commissioner*, 134 F.2d 796 (7th Cir. 1943), relied on by the district court, involved a will that expressly empowered the trustees (one of them the decedent's son) to choose, "at their discretion and option, to pay any worthy charitable, religious or educational corporation, association or enterprise, operating in the city of Milwaukee, Wisconsin, such sums of money . . . as they may deem best . . . ." *Id.*, at 798. The amount to be given such organizations was the indefinite residue of the estate, which was dependent on both the uncertain duration of other gifts in trust and the judgment of the trustees that "they shall have in their possession trust property more than sufficient to meet in full all the previous requirements of my will . . . ." *Id.*

█ In this case, when the will and trust are viewed together, the decedent's specific intentions are plain. The will makes various absolute pecuniary bequests, including the charitable gifts. Only after these bequests are made may the decedent's relatives share in the remainder of her estate. Under the will alone, it is indisputable that the charities were to take, to the extent of the amounts specified, in preference to the residual legatees. *Smith v.*

6. Plaintiffs–appellants alleged in their complaint, and defendant–appellee admitted in its answer, that the estate paid federal estate taxes, not including the contested deficiency, of $178,373.42. Since appellee has also conceded that the bulk of decedent's assets were in the trust, the trust obviously contained, even after taxes, several times the amount necessary to make the charitable gifts.

7. We compare the disputed provisions of the trust with Article II(A)(2), which provides that should the settlor during her lifetime become unable to act in her own behalf, "the Trustee may, in its absolute discretion, pay to or apply for her benefit such amounts from the income and principal of the trust estate up to the whole thereof, as the Trustee may, from time to time, deem advisable." In exercising this discretion, however, "the Trustee is directed to consult

with the Settlor's nephew, Burton Winer . . . and in the event that the said Trustee and the said Burton Winer do not agree as to whether such payment is necessary or advisable, his discretion shall control." Thus, in this instance, when it would be necessary to make decisions regarding the distribution of trust assets unguided by the settlor's explicit directions, the settlor preferred to place the final decision in the hands of a trusted relative rather than the professional trustee. (Mr. Winer was also made co–executor of the will.) Had such unfettered discretion been intended in the distribution of assets after the settlor's death to charities of such obvious interest to decedent and her husband, it seems utterly improbable that the settlor would have conferred it upon the trust company.

*Livermore*, 298 Mass. 223, 10 N.E.2d 117 (1937). The supplementary trust clearly does not reflect an alteration of this design. The trust was made simultaneously with the will; it designates the same professional fiduciary as does the will; and it disposes of the trust remainder in identical fashion as the will disposes of the residuary estate. As the trust was fully revocable, all property therein was taxable at the settlor's death exactly as if owned outright. Nothing in the trust instrument suggests that the decedent intended a different dispositive plan depending upon whether her assets at the time of her death were in the revocable trust or in the probate estate. Indeed, every circumstance indicates the contrary.[8]

Read against these obvious facts, the discretionary language in subparagraph 4 cannot be pushed to its literal limits and construed as empowering the trustee (which is also the co–executor) to frustrate Mrs. Cline's testamentary wishes. The more reasonable reading of subparagraph 4–which empowers the trustee "to consider the assets of the Settlor's estate" and, in its absolute discretion, "determine whether any such payment shall be made from the assets of this trust"–is that the clause was intended to give the trustee full control merely over decisions concerning which specific assets, whether those in the trust or those in the probate estate if solvent, were to be applied in payment of particular expenses and bequests at Mrs. Cline's death. Thus State Street, as trustee and co–executor, might or might not find it desirable to apply particular securities or cash in the trust to payment of certain probate obligations, including legacies; its decision as to such matters would be final. This was the meaning understood by Mr. Butler, an experienced trust officer. It was never contemplated, however, that State Street would make up its own mind concerning whether or not to pay those charities which Mrs. Cline, in loving detail, had specified in her will. Its decision–making was limited to the details of what assets, in what "pile," to use to achieve the ordained result. Certainly that construction alone makes sense in the circumstances that existed here at Mrs. Cline's death–where the trust held ample assets to pay the legacies and where there were no factors, such as evidence that the decedent no longer wished to benefit the charities, which might have provided a trustee with objective justification *not* to pay the legacies.

The availability of the estate tax charitable deduction depends not on the niceties of legal drafting but on the certainty, realistically viewed in light of the circumstances existing at the time of the decedent's death, that a charitable gift will be made. *See, e. g., United States v. Dean*, 224 F.2d 26 (1st Cir. 1955). Under the undisputed facts indicated here, it would have been unthinkable for a trustee to refuse to pay the charities, and certain that the Massachusetts courts would have intervened had it chosen to do so. We therefore hold that the estate tax charitable deduction was improperly disallowed.

*Reversed.*

---

**8.** We take judicial notice that the creation of an interrelated will and revocable trust as devices for both lifetime management of property and disposition after death is a common device today. During the settlor's lifetime, as was the case here, the trust characteristically leaves ultimate control to the settlor; she gives up virtually nothing although, in the event of infirmity, the trustee is empowered to manage the property for her benefit, to pay bills, and so on. Mr. Butler's affidavit indicates that the trust and will were here created precisely to provide for this kind of management–to relieve Mrs. Cline of "current responsibilities." In fact, counsel tell us she entered a nursing home before her death. The interrelated character of the will and trust, and the full availability of trust property to the settlor during her lifetime, make it clear that the completion of her testamentary gifts was never intended to hinge on the fortuity of whether or not enough property remained outside the trust at her death to pay all legacies.