GEORGE F. JEWETT, trustee, *vs.* DANIEL L. BROWN & others.

Norfolk.    January 10, 1946. — March 1, 1946.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Trust,* Express trust: construction; Income beneficiary. *Words,* "Share or part."

Under a certain trust instrument, when construed as a whole in the light of the circumstances attending its execution, provisions of the second and third clauses directing payment of "the net income" to the settlor's husband, and after his death to her son, "quarterly or oftener during his life," were controlled by provisions of the seventh clause that, so "far as the trustee is directed to pay income of any share or part to any beneficiary he may do so only with the consent of" a "committee" set up by the eighth clause, who by that clause and the ninth and tenth clauses were given powers to remove the trustee, to fill any vacancy in the office of trustee or member of the committee, and other powers such that the trustee was little more than a trustee in name only, much of the customary fiduciary powers being conferred on the committee.

PETITION for instructions, filed in the Probate Court for the county of Norfolk on April 12, 1945, by George F. Jewett, trustee under an instrument executed by Margaret W. Jewett, on December 24, 1931.

The case was heard by *Reynolds*, J.

Clause Eighth of the trust instrument, quoted in part in the opinion, reads as follows: "Clause Eighth: It is my desire that this trust shall continue to be a Massachusetts trust. It is to be created in Massachusetts and throughout its entire term is to be governed by the laws hereof. Except as otherwise herein provided, the trust shall always be kept in and accounted for in Massachusetts. Nevertheless, I provide that if while my said husband is entitled to the income he shall change his domicile or if while my son is entitled to the income he is not a resident of Massachusetts either of them may with the approval of the committee in writing remove the trust fund to the place of his domicile, after which it shall be considered to be there situ-

ate although the interpretation and validity hereof shall still be governed by the laws of Massachusetts. No exercise of this power shall exhaust it or prevent other moves thereafter by my husband or my son. Because of this desire and plan I have not asked any of my family or friends domiciled outside of Massachusetts to be trustee or trustees hereunder. But desiring the trustee to have assistance in the management of the trust, I hereby create in my husband James R. Jewett, Edwin W. Davis, of Cloquet, Minnesota, and said Daniel L. Brown, herein referred to as the committee, a joint power exercisable at any time or times and from time to time by any two of them by an instrument in writing to do the following things:

"A. To remove the trustee hereunder and to substitute another trustee in his place and stead, and to fill any vacancy in the office of trustee hereunder.

"B. In the event of a vacancy by death, resignation, or otherwise, so that there are fewer than three members of the committee, to appoint a member or members to make the committee up to three again, each person so appointed to share in all the powers hereunder given, including the power to appoint in case of further vacancy as fully as if originally named. One or two remaining committee members may likewise fill all vacancies. The committee may in their discretion (with the consent of said George F. Jewett if he is living) alter their number, in which case a majority of the altered number or the remaining members, if less than a majority by reason of vacancies, shall have all the powers of the committee.

"C. At any time or times when any person, other than my said husband or my said son is entitled to the income of any fund or share, the committee may by a writing as aforesaid direct the payment to such person of any part or parts of the principal whereof he is entitled to receive the income and upon the execution of such writing the right to such principal shall forthwith vest in such person.

"D. The consent of the committee wherever required by this instrument shall be given in writing signed by any two of its number."

*M. A. Shattuck,* guardian ad litem, pro se.

No argument nor brief for the other respondents.

WILKINS, J. This is a petition for instructions filed in the Probate Court by the trustee under an instrument of December 24, 1931, executed by Margaret W. Jewett, then of "Woods Hole," since deceased. The instructions sought were whether James R. Jewett, and later George F. Jewett, as life beneficiaries, were unqualifiedly entitled to receive the net income, or whether the trustee's authority to make payments to them was subject to a provision of the trust instrument requiring the consent of a committee. From the decree entered by the judge in effect that the life beneficiaries were unqualifiedly entitled, the guardian ad litem for certain minors and persons unborn or unascertained appealed.

The trust instrument set over to Daniel L. Brown, trustee, "the property described in a schedule of even date signed by me," the exact nature of which does not appear. We quote or summarize the material parts of the instrument. "Clause Second: The trustee shall pay the net income of the fund to my husband, James R. Jewett, quarterly or oftener during his life." "Clause Third" gives to James R. Jewett a power of appointment by will of ten per cent of the fund to charities, and states, "The trustee shall thereafter during the life of my son, George F. Jewett, pay to him quarterly or oftener the net income during his life. While my son is entitled to income he may from time to time by a writing or writings signed by him appoint . . . to himself or to any other person." "Clause Fourth: Upon the death of my said son (or upon the death of my said husband if my said son dies before my said husband), the trustee shall divide the remaining principal and all unpaid, accrued, and accumulated income of the fund into shares so that there shall be one share for each child of my son, then living and one share for the issue then living of each deceased child of my said son. The trustee shall hold, manage, and dispose of these shares as follows: A. The trustee shall distribute each share set aside for the issue of a deceased child to such issue per stirpes free of trust.

B. The trustee shall pay to each living child quarterly or oftener the net income of his or her share during his or her life, and upon his or her death shall distribute his or her share to his or her issue then living per stirpes free of trust." Here follow provisions as to distribution in the event that there should be no such issue. "Clause Seventh: The beneficial interests are also subject to the following provisions: . . . B. So far as the trustee is directed to pay income of any share or part to any beneficiary he may do so only with the consent of the committee hereinafter created, otherwise he shall accumulate said income and retain the accumulations on a separate account with power with the consent of the committee to pay them out at a later time or later times as if they were part of current income or to transfer them from time to time to principal." "Clause Eighth: . . . But desiring the trustee to have assistance in the management of the trust, I hereby create in my husband James R. Jewett, Edwin W. Davis, of Cloquet, Minnesota, and said Daniel L. Brown, herein referred to as the committee, a joint power exercisable at any time or times and from time to time by any two of them by an instrument in writing to do the following things:" to remove the trustee, and to fill any vacancy as trustee or as member of the committee. "C. At any time or times when any person, other than my said husband or my said son is entitled to the income of any fund or share, the committee may by a writing as aforesaid direct the payment to such person of any part or parts of the principal whereof he is entitled to receive the income and upon the execution of such writing the right to such principal shall forthwith vest in such person." "Clause Ninth: The legal title to the trust fund or funds shall at all times be in the trustee. He shall have power and right to receive and to disburse income and principal. He shall not, however, exercise any of the other powers herein given, or the rights of ownership except with the consent and approval in writing of the committee given in the manner provided in Clause Eighth." The safety deposit box might be visited in the presence of not less than two persons chosen from among the trustee and the com-

mittee. "Clause Tenth" gives the trustee many of the usual powers of trustees, but these were to be "exercised only with the consent and approval in writing of the committee given in the manner provided in Clause Eighth hereof."

The parties made a stipulation in writing, which was approved by the judge as part of the record, in which it was agreed that on January 14, 1932, Daniel L. Brown resigned as trustee, and was succeeded by James R. Jewett, who served until September 25, 1940, when in turn he was succeeded by George F. Jewett; that both James R. Jewett and George F. Jewett were men of independent means; and that James R. Jewett was sixty-nine years of age when the trust instrument was executed, and was eighty-one years of age at his death on March 31, 1943.

The petition alleged, and the answers admitted, that during the life of James R. Jewett, and since March 31, 1943, when George F. Jewett became the life beneficiary, the trustee accumulated the net income in accordance with "Clause Seventh," paragraph B, except when expressly directed by the committee to make payments of income to those beneficiaries; and that in a proceeding involving the income tax liability of James R. Jewett for the calendar year 1939 upon income of the trust the Tax Court of the United States construed the trust instrument as requiring the trustee to pay the net income to James R. Jewett and George F. Jewett during their respective lives, without regard to "Clause Seventh," paragraph B.

There are no findings by the judge, and no evidence is reported, but certain facts appear from the opinion of the Tax Court of the United States, which is annexed to the petition. The net income of the trust for 1939 was $89,198.47, of which $20,250 was paid to James R. Jewett pursuant to a written consent of the committee dated December 27, 1939. The trust instrument was drafted by Daniel L. Brown as attorney for Margaret W. Jewett. He prepared and filed the income tax returns for the trust and for James R. Jewett for 1939, and it was on his recommendation that James R. Jewett was paid only $20,250.

It was his custom toward the end of each year to consider the income of James R. Jewett and the income of the trust and to suggest to another member of the committee that "they" pay James R. Jewett enough so that the greatest saving in income tax for him and for the trust would be made. James R. Jewett never demanded of the committee payment of more than $20,250 in 1939.

The question to be decided is whether the provisions of "Clause Seventh," paragraph B, apply to payments made to the life beneficiaries under "Clause Second" and "Clause Third," or whether they are limited in operation to the payments to be made to later beneficiaries under "Clause Fourth," paragraph B. The judge took the latter view, and in so doing in substance ruled that during the life of James R. Jewett and the life of George F. Jewett the consent of the committee was not a prerequisite to the payment of the income by the trustee.

The intent of the creator of the trust is to be ascertained from a study of the instrument as a whole in the light of the circumstances attending its execution. Search should be made for a general plan, presumably designed to express a consistent and harmonious purpose. Due weight should be attributed to all the language, and some words cannot be permitted to contravene an intent so deduced. Full effect must be given to such intent unless prevented by some positive rule of law. *Ware* v. *Minot*, 202 Mass. 512, 516. *Temple* v. *Russell*, 251 Mass. 231, 235–236. *Crowell* v. *Chapman*, 257 Mass. 492, 495. *Sewall* v. *Elder*, 279 Mass. 473, 476–477. *State Street Trust Co.* v. *Crocker*, 306 Mass. 257, 260. *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 259. *Mills* v. *Blakelin*, 307 Mass. 542, 544.

Applying these principles, we think that the general plan of the creator of the trust was to provide for an accumulation of income in the hands of the trustee to be paid out to all the beneficiaries, including James R. Jewett and George F. Jewett, only with the written consent of the committee, which should determine the times for such payments.

It is at once evident that the trustee has only the most limited powers and is almost entirely subordinate to the

committee, a self-perpetuating body. He may be removed by the committee, which is empowered to fill vacancies. He has legal title to the trust property, and has the power and the right to disburse income and principal. But the exercise of all his other powers and "the rights of ownership," including, we think, the determination of the times for payments of income, is contingent upon the written consent and approval of the committee. He may not even visit the safety deposit box alone. In short, he is little more than a trustee in name only, while much of the customary fiduciary power is conferred upon the committee.

No sound reason may be perceived for according a delayed operation to "Clause Seventh," paragraph B. The independent means of James R. Jewett and George F. Jewett and the fact that they are successively recipients of the entire income of the trust, which is large, would be important factors in not excepting them from its scope. At the outset "Clause Seventh" declares, "The beneficial interests are also subject to the following provisions." These words by themselves certainly import no exception. Undue weight should not be given to the use of the words "share or part" in "Clause Seventh," paragraph B. Those words include a one hundred per cent share, or the entire portions or interest of those two life beneficiaries. See *Jones* v. *Gane*, 205 Mass. 37, 44–45. See also *Lewis's Appeal*, 108 Penn. St. 133, 136–137; *Eisiminger* v. *Eisiminger*, 129 Penn. St. 564, 566; *Small* v. *Small*, 242 Penn. St. 235, 238; *Gotwald* v. *Small*, 242 Penn. St. 239, 240; *In re Conley*, 122 W. Va. 559, 562. It is our view that the words "income of any share or part" in "Clause Seventh," paragraph B, are synonymous with "the trust property" or "the trust fund." Our conclusion is assisted by the language of "Clause Eighth," paragraph C, giving the committee power to direct the payment of principal at "any time or times when any person, other than my said husband or my said son is entitled to the income of any fund or share." Since the husband, and later the son, were exclusively "entitled" to the whole income, if "entitled" at all, the word "share" obviously relates to a totality. There is no reason for believing

that "share" has a more restricted meaning in "Clause Seventh," paragraph B, than it necessarily has in "Clause Eighth," paragraph C.

No importance should be given to the fact that "Clause Second" and "Clause Third" provide unconditionally for the payment of income by the trustee to James R. Jewett and George F. Jewett. The same unconditional language is to be found in "Clause Fourth," paragraph B, providing for payments of income to the children of George F. Jewett, which, even on the judge's ruling, must be subject to "Clause Seventh," paragraph B, or the latter clause would be utterly inoperative.

It is most reasonable to hold that clauses "Second" and "Third," as well as "Fourth," are qualified by "Clause Seventh," paragraph B, which occupies a position in the instrument between two paragraphs which clearly apply to all payments under the instrument. "Clause Seventh," paragraph A, allows payments to be made to minors or to a beneficiary's guardian or conservator; and authorizes expenditures for the use or benefit of a beneficiary, as well as the determination of what expenditures are for the use or benefit of a beneficiary. "Clause Seventh," paragraph C, imposes a restraint upon alienation and contains a spendthrift clause. It would be draftsmanship deficient in symmetry, at least, if "Clause Seventh," paragraph B, notwithstanding the use of the words "share or part," were to lack the general application of the two adjacent paragraphs.

Strong support for our conclusion is to be found in "Clause Fourth," which is a mandate arising upon the death of the survivor of James R. Jewett and George F. Jewett to divide "the remaining principal and all unpaid, accrued, and accumulated income" into shares for the later beneficiaries. If those two life beneficiaries were entitled to the income without the consent of the committee, the reference to "accumulated income" would seem superfluous.

The decree of the Probate Court is reversed. A new decree is to be entered which shall provide that during the life of James R. Jewett and during the life of George F.

Jewett, respectively, the accumulation of the net income of the trust was, and is, subject to the provisions of "Clause Seventh," paragraph B, of the trust instrument.

*So ordered.*