RONALD S. WOODBERRY & another, executors, & others *vs.* PAUL W. BUNKER & others.

Suffolk. March 3, 1971. — April 9, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Jurisdiction,* State law affecting Federal tax. *Trust,* Trustee's discretion, Use of principal.

An interpretation by this court of the discretionary powers of administration and management granted to executors and trustees in a will is binding on Federal courts as to issues under Federal tax laws. [240]

In a will which set up a residuary trust for the benefit of a relative of the testatrix for life with the remainder to designated charities, a provision that the trustees should pay to the life beneficiary "such part or parts of the principal held in trust for him . . . as in the opinion of my Trustees shall be needed for his . . . comfortable support, medical or nursing care, or other purposes which seem wise to my Trustees" indicated that the life beneficiary should be maintained in accordance with the standard of living which was normal for him before he became a beneficiary of the trust, and that principal should be paid over to him, after depletion of trust income and with reasonable consideration of his other resources, for his necessary expenses, extraordinary or not, which would not otherwise be satisfied; as so interpreted an administrative standard was established for the trustees which was judicially enforceable. [243]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on May 7, 1970.

The case was reserved and reported by *Kirk,* J.

*Virginia Aldrich* stated the case.

*Robert J. McGee* for Northeastern University & another.

*Lispenard B. Phister* for Paul W. Bunker, *Francis W. K. Smith* for Somerville Home for the Aged, & *John H. Tomfohrde* for Broadway Winter Hill Church, joined in a brief.

REARDON, J. This matter, reserved and reported to us by a single justice, presents an issue similar to that presented in *Worcester County Natl. Bank* v. *King, ante,* 231, decided by us today. In the *King* case we were concerned with the proper interpretation of broadly phrased discretionary powers of administration and management granted to executors and trustees in a will. This case deals with the proper interpretation of powers to invade principal for the benefit of a life beneficiary of a trust. As in the *King* case, the Internal Revenue Service has disallowed a deduction from the Federal estate tax for charitable remainders. In this instance the deduction has not been allowed because the Internal Revenue Service alleges that the power of invasion of the principal is not limited by "an ascertainable, objective standard." Resolution of this issue is dependent upon the meaning of the power to invade as a matter of our State law. In construing this clause we reiterate the hope that this case and the *King* case may be dispositive of the issues arising in the future under Federal tax laws which hinge on the proper interpretation under our law of the kind of clause with which we deal. Under *Commissioner of Internal Revenue* v. *Estate of Bosch,* 387 U. S. 456, our decisions on these matters of State law are binding on Federal Courts.

The clause which is before us in this case is contained in the will of one Margaret P. Bunker, a resident of Winchester deceased in 1967. Her will set up a residuary trust for the benefit of two of her relatives during their lives,[1] with the remainder to designated charities. Article 16 (g) provides for payment to the life beneficiaries of "such part or parts of the principal held in trust for him or her as in the opinion of my Trustees shall be needed for his or her comfortable support, medical or nursing care, *or other purposes*

---

[1] One of the life beneficiaries was deceased before the bringing of this suit.

*which seem wise to my Trustees*" (emphasis supplied). The power of invasion is thus limited by its terms except in the last underlined phrase, considered in isolation.

We observe first that a power to invade principal conferred upon a trustee is not unrestricted even where the power is not conditioned by any statement in the governing document that such expenditures are to be made only upon the existence of certain facts or for certain stated purposes. We have held that such a power must be exercised with prudence and reasonableness and with "that soundness of judgment which follows from a due appreciation of trust responsibility." *Boyden* v. *Stevens*, 285 Mass. 176, 179. *Damon* v. *Damon*, 312 Mass. 268, 272. Thus in all cases the court has at least a minimal supervisory power over the exercise by the trustee of a power to invade principal beyond ensuring that the trustee acts in good faith. In addition, we have quoted with approval (in speaking generally of powers to invade principal) a statement we originally made in the context of administrative powers: "A fair reading of the whole of most trust instruments will reveal a *'judicially enforceable, external, and ascertainable* standard' for the exercise of even broadly expressed fiduciary powers" (emphasis supplied). *Briggs* v. *Crowley*, 352 Mass. 194, 201 (a trust to provide for "the necessaries and comfort of" sundry life beneficiaries with "the fullest authority and discretion" without limit in the trustees "*in order to accomplish this purpose*").

The clause in the Bunker will is narrower in scope, however, and more typical of powers to invade principal than those which seek to limit trustees only by their own good sense. It is a member of that class of powers which limits expenditure to the comfort, maintenance and support of the life beneficiary. We do not view the substance of the clause as affected by the addition of the phrase incorporating the broader terminology "or other purposes which seem wise to my Trustees." The intent of the testatrix in this instance was to maintain the life beneficiary in accordance with his usual standard of living. This may or may not call for oc-

casional invasion of principal, depending on the amount of the trust income, whether the life beneficiary has independent income sources, or any of a variety of circumstances. It is a practical impossibility to enumerate in detail and in advance the many occurrences which might require invasion of principal in order to maintain the life beneficiary according to his usual standard of living. The broader phrase thus appears to have been inserted out of an abundance of caution — to assure the trustees that they were not powerless to deal with unforeseen situations as they arose so as to effectuate the intent of the testatrix that the life beneficiary be provided for in reasonable fashion. One might therefore agree with the petitioners that the last phrase of the power should be read as meaning "such other like purposes as my Trustees may, in their wise consideration, determine to be necessary to enable the beneficiary to maintain his or her accustomed standard of living."

Our past cases provide some assistance in defining the overall standard provided by this clause and similar "comfort, maintenance and·support" clauses with or without the single broad grant of power which this clause contains. In *Lumbert* v. *Fisher*, 245 Mass. 190, where we were dealing with a power to invade "if necessary 'for . . . [the life beneficiary's] comfort, maintenance and support,'" we stated, "She is entitled to receive such sums as are reasonable taking into account her age and physical condition, her station in life and all the circumstances." P. 194. Again, in dealing with a power to invade "as may be necessary or desirable for the proper support and maintenance of my . . . wife," we noted, "In the exercise of this power, the trustee is to take into account all the relevant circumstances known to it, including the sufficiency or insufficiency of the trust income, the size of the trust estate, the probable diminution of future trust income as a consequence of each such expenditure of principal, the extent of . . . [the life beneficiary's] then existing need, her probable future needs, [and] her state of health . . .." *Copp* v. *Worcester County Natl. Bank*, 347 Mass. 548, 550–551. In the *Copp* case we em-

phasized that this power in the trustee was not unrestricted and that a court of equity might control the trustee "in the exercise of a fiduciary discretion if it acts beyond the bounds of a reasonable judgment or unreasonably disregards usual fiduciary principles . . . ." We have stated in addition that where such terms as "when in need" or "if necessary" are used, other resources of the life beneficiary are to be considered. However, it is not required, unless expressly stated by the testator, that the life beneficiary "exhaust the whole of her individual estate before she is entitled to have any part of the principal." *Lumbert* v. *Fisher, supra,* at 194.

We thus conclude that the clause we consider, and others like it, may be interpreted and made operable in the following terms. The beneficiary is to be maintained in accordance with the standard of living which was normal for him before he became a beneficiary of the trust. Principal is to be paid over, after depletion of trust income and with reasonable consideration of the beneficiary's other resources, for necessary expenses of the life beneficiary, be they extraordinary or not, which would not otherwise be satisfied barring "a substantial adverse effect upon the beneficiary's accustomed standard of living." This is a judicially enforceable standard, but in hearing contests which may arise under it a court should not disturb unless plainly wrong the decisions of trustees made in good faith, and after ascertaining with due diligence the relevant facts.

A final decree is to enter in accordance with this opinion.

*So ordered.*