LAWRENCE DANA & others, executors, vs.
FRANK MCQUESTEN GRING & others.

Middlesex. January 5, 1977. — December 28, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Jurisdiction*, State law affecting Federal tax. *Trust*, Trustee's discretion,
Use of principal, Construction.

Executors of a will were entitled to maintain an essentially nonadversary
proceeding in a Probate Court for instructions with respect to whether
property held in trust for the testatrix was includible in her gross estate
so that they could determine the value of the estate for Federal estate
tax purposes and decide whether to pursue a Federal estate tax refund
claim. [113-115]
A provision in a testamentary trust allowing the trustees to invade prin-
cipal "as said Trustees . . . deem necessary or desirable for the purpose
of contributing to the reasonable welfare or happiness of . . . [the testa-
tor's] daughter or of her immediate family" provided an objective, as-
certainable standard which limited trustee discretion to distribute trust
principal. [115-118]
In a provision in a testamentary trust which authorized the trustees, upon
the request of a trustee-beneficiary, or "without such request when the
other Trustees may deem it advisable, to pay over to her . . . such
amounts of the principal . . . as said Trustees may deem necessary or
desirable," the term "said Trustees" was construed to mean trustees
other than the beneficiary. [118-119]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on November 10, 1975.

The case was reserved and reported by *Freedman, J.*, to
the Appeals Court. The Supreme Judicial Court granted a
request for direct review.

*Richard D. Leggat (Lawrence I. Silverstein* with him) for
the plaintiffs.

*Myron C. Baum*, Acting Assistant Attorney General,
*Gilbert E. Andrews, William A. Friedlander, Jonathan S.*

*Cohen, & Robert A. Bernstein,* for the United States, amicus curiae, submitted a brief.

HENNESSEY, C.J. The plaintiffs, as executors of the will of Helen Barnet Gring (Gring), commenced this action in the Probate Court for Middlesex County by a complaint for instructions, seeking the proper interpretation of a testamentary provision contained in the will of Frank B. McQuesten, Gring's father. The executors sought instructions in order that they could (1) determine properly the value of Gring's gross estate for Federal estate tax purposes, and (2) determine their duties and obligations with respect to pursuing a Federal estate tax refund claim. Although the Internal Revenue Service (I.R.S.) was given timely notice and an invitation to intervene, it declined to participate in the probate proceedings.[1] The case was reserved and reported without decision to the Appeals Court on the pleadings and a statement of agreed facts. We granted direct appellate review on application by the plaintiffs.

Preliminarily this court must determine whether it is appropriate for us to decide this case, or whether we should dismiss the matter as a nonadversary proceeding. On the merits, the issue is whether property held in trust for Gring pursuant to a provision of her father's will is includible in her gross estate for the purpose of determining Federal estate tax liability. Under Int. Rev. Code of 1954, § 2041, the trust property is includible in Gring's gross estate if at her death it was held subject to a general power of appointment. Under the Internal Revenue Code, there is no general power of appointment if (1) the trustee's discretion to distribute trust principal to Gring during her lifetime was limited by an "ascertainable standard relating to . . . [her] health, education, support, or maintenance," Int. Rev. Code of 1954, § 2041(b)(1)(A), or if (2) Gring had no power to participate in any decisions related to distribution of principal to her. Although the I.R.S. argues that there is no

---

[1] The United States did file an amicus curiae brief in this court subsequent to oral argument.

State law question directly in issue here, the plaintiffs urge this court to interpret the McQuesten will and to decide as a matter of State law that the terms of the trust set forth in that will (1) provided an ascertainable standard limiting trustee discretion to invade the principal, and (2) precluded Gring from participating in any decision concerning distribution of principal to her.

We conclude that it is appropriate for us to decide the issues raised. Further, as to the merits of those issues, we agree with both contentions asserted by the plaintiffs.

The facts are as follows. Frank B. McQuesten died in 1947, leaving a will which was admitted to probate the same year. Article Fourteenth of the will[2] provided that

---

[2] "*FOURTEENTH*: All of the rest and residue of my property I direct shall forthwith be divided into two equal portions. One of such equal portions I give to my son, George E. McQuesten, outright. From the other equal portion I give the sum of One Hundred Thousand Dollars ($100,000) to my daughter, Helen B. Gring, outright, and the balance I give to the Trustees hereinafter named for the following purposes: To pay over the net income therefrom to my said daughter, Helen B. Gring, during her life; and I further authorize my Trustees at any time that my said daughter may request, or without such request when the other Trustees may deem it advisable, to pay over to her from time to time such amounts of the principal for her own use as said Trustees may deem necessary or desirable for the purpose of contributing to the reasonable welfare or happiness of my said daughter or of her immediate family. Upon the death of my daughter, Helen B. Gring, the whole of the principal of the trust fund held for her benefit then remaining shall be paid over to such lineal descendants of mine as my said daughter may in her last will and testament appoint to receive the same. In default of such appointment, I direct that said trust shall continue and the income thereof be paid over to the issue then living of my daughter in equal shares per stirpes; provided that as any one of said issue entitled to a share of income shall reach the age of thirty, one-quarter of his proportionate share of the principal shall be paid over to him, at thirty-five a further quarter, at forty a further quarter, and at forty-five the remaining portion of his share of the principal; the trust, however, in any event, to terminate and the shares of the principal not already distributed to be paid over to such issue per stirpes not later than twenty years and eleven months after the death of the last survivor of any of such issue who may be living at the time of my decease. If no issue of my daughter be living at the termination of the trust, I direct

part of the residue of his estate was to be placed in trust, under which Gring was to receive income for life and as much of the principal as the trustees deemed necessary for "the reasonable welfare or happiness" of Helen Gring or her immediate family. Gring was given a special testamentary power to appoint the principal to any of McQuesten's lineal descendants then living. Additionally, Gring was named to serve as one of three trustees of the trust, in which capacity she served until her death in 1973. Finally, the trust provisions included a "spendthrift" clause purporting to limit Gring's right to alienate or assign the trust fund for the benefit of creditors.

By article Fifteenth of her will, Gring appointed the trust property outright to her issue living at the time of her death, her son and daughter, defendants herein. The plaintiffs, as executors of her will, filed a Federal estate tax return in 1973 which included the value of the property held in the trust ($449,214) in her gross estate and paid the Federal estate tax accordingly. The plaintiffs later decided that the inclusion of the trust property in Gring's gross estate had been erroneous, and in 1975 filed a claim for a refund of that portion of the Federal estate tax attributable to the inclusion of the trust property.

The I.R.S. advised the plaintiffs, by an agent's examination report dated July 25, 1975, that the trust property was properly includible in Gring's gross estate for Federal estate tax purposes. The plaintiffs filed a refund claim on August 5, 1975, and by letter dated August 6, 1975, protested the agent's determination and requested consideration of the refund claim by the Appellate Division of the office of

that the principal then remaining shall be paid over to my son, George B. McQuesten, or his blood issue then living per stirpes, and in the event of the failure of any of the foregoing to survive, I direct that it be paid over to the Salem Hospital, of Salem, Massachusetts. It is my will and I direct that the trust fund hereby created for the benefit of my said daughter, Helen B. Gring, and her issue, shall be free from any right of assignment or alienation on her part, or from attachments or any rights of creditors or others having claims upon her."

the Regional Commissioner of Internal Revenue. The complaint for instructions was filed on November 10, 1975.

1. We conclude that it is appropriate for us to decide the merits of this case. First, there are questions of State law directly in issue. Although the decision whether to include the trust property in Gring's gross estate for the purposes of determining tax liability is undeniably a question of Federal tax law, see *Morgan* v. *Commissioner,* 309 U.S. 78, 80-81 (1940), a conclusion as to the extent of Gring's power under the terms of the trust involves the interpretation of a testamentary instrument, and, as such, clearly turns on questions of State law. See, e.g., *Mazzola* v. *Myers,* 363 Mass. 625, 633 (1973); *Old Colony Trust Co.* v. *Silliman,* 352 Mass. 6, 8 (1967); *Morgan* v. *Commissioner, supra* at 80; *Blair* v. *Commissioner,* 300 U.S. 5, 9-10 (1937); *Freuler* v. *Helvering,* 291 U.S. 35, 44-45 (1934); *Stedman* v. *United States,* 233 F. Supp. 569, 571 (D. Mass. 1964); *Pittsfield Nat'l Bank* v. *United States,* 181 F. Supp. 851, 853 (D. Mass. 1960). Following the above principle, this court on numerous occasions has allowed petitions for instructions concerning the interpretation of a will, where such questions arose in the context of a controversy with the I.R.S. See, e.g., *Mazzola* v. *Myers, supra* at 634; *Woodberry* v. *Bunker,* 359 Mass. 239, 240 (1971); *Old Colony Trust Co.* v. *Silliman, supra* at 8; *Watson* v. *Goldthwaite,* 345 Mass. 29, 31 (1962). See also *Persky* v. *Hutner,* 369 Mass. 7, 8 (1975); *Putnam* v. *Putnam,* 366 Mass. 261, 262 (1974) (declaratory relief granted).

Second, we have decided such questions of State law even where, as here,[3] all immediate parties sought the same result or, in other words, where there were no real "adversaries" before this court.[4] See *Persky* v. *Hutner, supra* at 8;

---

[3] In the instant case, the plaintiff-executors include Gring's son and daughter and Lawrence Dana. The defendant-appointees are, again, Gring's son and daughter. The Attorney General for the Commonwealth, also named as a defendant, essentially has taken a position of neutrality.

[4] This type of "nonadversary" proceeding is not new to Massachusetts courts. Often a stakeholder or trustee needs an answer to a current prob-

*Putnam* v. *Putnam, supra* at 265-266; *Old Colony Trust Co.*
v. *Silliman, supra* at 8. Although in this case the interests of
the plaintiff-executors and defendant-appointees are essen-
tially the same (see note 3, *supra*), the parties have submit-
ted concrete questions of State law which grow out of an ac-
tual, live dispute. Further, the I.R.S. was given timely no-
tice of the proceedings and an opportunity to intervene, but
declined to do so. In light of these considerations, we find
that the "nonadversary" nature of this proceeding should
not preclude our review.

The United States argues in its amicus brief that the in-
stant case is distinguishable from those where we have an-
swered questions of State law arising from Federal tax dis-
putes, in that a decision here would not "directly . . . [af-
fect] the nature of state property interests." Although the
I.R.S. is correct in pointing out that any decision by this
court would not "[enlarge] the estate or trust shares of one
beneficiary or class of beneficiaries as against those of an-
other," this fact is not determinative. A decision in this case
will serve to define clearly the nature of the property inter-
est which had passed to Gring under her father's will, there-
by answering an important question concerning the proper
administration of the Gring estate. As such, a determination
of the merits is consistent with past cases holding that a peti-
tion for instructions properly may be entertained where
trustees or executors have some present duty to perform
with respect to trust funds. See generally *Dumaine* v. *Du-
maine,* 301 Mass. 214, 217 (1938); *Cronan* v. *Cronan,* 286
Mass. 497, 499 (1934); *Hull* v. *Adams,* 286 Mass. 329, 331-
332 (1934); *Boyden* v. *Stevens,* 285 Mass. 176, 180 (1934);
*Saltonstall* v. *Treasurer & Receiver Gen.,* 256 Mass. 519,
528 (1926).

Third, our decision with respect to the State law ques-
tions in this case will be dispositive both for purposes of our
own subsequent decisions, see *Old Colony Trust Co.* v. *Silli-*

lem, files for instructions, and obtains a determination where no one else
appears.

*man,* 352 Mass. 6, 9 (1967), and for purposes of any further Federal litigation concerning this estate. See *Putnam* v. *Putnam,* 366 Mass. 261, 262 n.2 (1974); *Mazzola* v. *Myers,* 363 Mass. 625, 633-634 (1973); *Worcester County Nat'l Bank* v. *King,* 359 Mass. 231, 233 & n.1 (1971). See also *Commissioner* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967). As we stated in *Babson* v. *Babson, ante,* 96, 103 n.5 (1977), "We are mindful of the suggestion of the Supreme Court in *Freuler* v. *Helvering,* 291 U.S. 35, 45 (1934), that the conclusiveness of a State court construction in subsequent tax litigation may depend on its being made in the course of an 'adversary' proceeding. But see *Commissioner* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967). We conclude, however, that where all interested adverse parties were notified and given an opportunity to be heard, where the parties before the court seek a judicial determination of rights rather than a mere consent decree, and where the matter arose in a regular manner, with no suggestion of collusion or fraud, the underlying purposes of the 'adversary' requirement have been met."

Finally, we are mindful of the fact that an alternative procedure exists whereby the plaintiffs could obtain an opinion of this court on the questions of State law at issue here. After administrative resolution of the case, the plaintiffs could pursue their refund claim in a United States District Court. Under S.J.C. Rule 3:21, § 1, 359 Mass. 790 (1971), the District Court then has the power to certify questions of State law to us if "it appears to the certifying court there is no controlling precedent in the decisions of this court." Such a proceeding is a relatively lengthy and expensive one, in light of the fact that a decision by this court will conclusively determine the State issues, and may thereby resolve the entire controversy between the plaintiffs and the I.R.S. Thus, a decision on the merits is warranted here.

2. It is the position of the I.R.S. that the power of the trustees to distribute trust principal to Mrs. Gring was governed solely according to Gring's subjective desires. This is so, argues the I.R.S., because: (1) McQuesten used the word

"happiness" when describing the purposes for which the trustees could invade principal for the benefit of his daughter; (2) McQuesten named his daughter trustee; and (3) in light of the above factors, the primary purpose of the trust was to benefit Gring, and not to preserve the trust principal. We cannot agree with this reading of the McQuesten will. Both from an examination of the trust terms themselves, and from our application of well settled Massachusetts law governing the fiduciary duties of trustees, we conclude that the power to invade trust principal for the benefit of Gring was not governed solely by her subjective desires, but was limited by objective, ascertainable standards.

Examining the trust provisions, we find that McQuesten allowed the trustees to invade trust principal not simply as it was required to ensure his daughter's "happiness," but, rather, "as said Trustees . . . deem[ed] necessary or desirable for the purpose of contributing to the reasonable welfare or happiness of . . . [his] daughter or of her immediate family." This provision alone, under Massachusetts law, provides an ascertainable standard governing trustee discretion to distribute trust principal.

In *Woodberry* v. *Bunker*, 359 Mass. 239, 240-241 (1971), this court construed a trust provision which was similar in its breadth to the trust provision in issue here. There, the settlor empowered the trustees to distribute principal "as in the opinion of my Trustees shall be needed for his or her comfortable support, medical or nursing care, *or other purposes which seem wise to my Trustees.*" In finding that this provision was sufficient to limit trustee discretion by an ascertainable standard, we reiterated the principle that "[a] fair reading of the whole of most trust instruments will reveal a '*judicially enforceable, external, and ascertainable* standard' for the exercise of even broadly expressed fiduciary powers." *Id.* at 241, quoting from *Briggs* v. *Crowley*, 352 Mass. 194, 201 (1967). See generally *Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 10 (1967); *Boston Safe Deposit & Trust Co.* v. *Stone*, 348 Mass. 345, 351 (1965); *Copp* v.

*Worcester County Nat'l Bank,* 347 Mass. 548, 551 (1964).
Following this principle we concluded in *Woodberry* at 243
that "the clause we consider, *and others like it,* may be in-
terpreted and made operable in the following terms. The
beneficiary is to be maintained in accordance with the
standard of living which was normal for him before he be-
came a beneficiary of the trust" (emphasis added). This is
precisely the standard to be applied to the McQuesten trust
provision.

The fact that McQuesten used the word "happiness" does
not take this trust provision out of the rule enunciated
above. In construing trust terms, it is a fundamental princi-
ple of Massachusetts law "to ascertain the intention of the
testator from the *whole* instrument, attributing due weight
to *all* its language . . . and to give effect to that intent unless
some positive rule of law forbids" (emphasis added). *Hill* v.
*Aldrich,* 326 Mass. 630, 632 (1951). See *Stryker* v. *Kennard,*
339 Mass. 373, 377 (1959); *Jewett* v. *Brown,* 319 Mass. 243,
248 (1946); *Gorey* v. *Guarente,* 303 Mass. 569, 573-574
(1939); *Dumaine* v. *Dumaine,* 301 Mass. 214, 218 (1938);
*Dittemore* v. *Dickey,* 249 Mass. 95, 104-105 (1924).

In reviewing the entire trust instrument we conclude that
the word "happiness" was not, as the I.R.S. suggests, evi-
dence of an intent to establish a trust for the sole benefit and
enjoyment of Gring. Rather, the word was used in the con-
text of a trust instrument which clearly reveals a concern for
preserving the trust fund for McQuesten's lineal descend-
ants alive at Gring's death. For example, McQuesten lim-
ited his daughter's testamentary power of appointment to
members of this class, and named members of the class as
takers in default of appointment. Further, McQuesten add-
ed a spendthrift clause to limit the life beneficiary's use of
the trust fund, where no comparable provision was made
for the lineal descendants who would take after Gring's
death. (See note 2, *supra.*) With this evident intent to pre-
serve the trust principal for lineal descendants alive after
Gring's death, the trustees could not, under Massachusetts
law, have distributed trust principal to the life beneficiary

solely on the basis of her subjective desires. "[I]n the absence of instructions to the contrary [a trustee is bound] to administer his trust with an eye to the remainder interest" as well as to the interest of the life beneficiary. *Blodget* v. *Delaney*, 201 F.2d 589, 593 (1st Cir. 1953). Accord, *Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 9-10 (1967). In light of these factors, we conclude that the use of the word "happiness" should not be construed either to alter the clear intention of the testator to preserve the trust principal for his lineal descendants alive at Gring's death, or to alter the effect of the rules of construction enunciated in *Woodberry* v. *Bunker, supra*.

The principles announced in *Merchants Nat'l Bank* v. *Commissioner*, 320 U.S. 256 (1943), are not to the contrary. There, the Supreme Court held that a trust provision which allowed trustees to distribute trust principal to the settlor's wife "at such time . . . as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife" did not limit trustee discretion by an ascertainable standard. *Id.* at 257-258. Crucial to the Court's conclusion was the context in which the word "happiness" was used. Of determinative weight was the fact that the settlor instructed the trustees to exercise their discretion "with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." *Id.* at 258. Thus, where, as here, the settlor expressed an intent to limit the life beneficiary's use of the trust fund, and to preserve the principal for the benefit of lineal descendants remaining at the life beneficiary's death; and where Massachusetts law limits trustee discretion to invade principal to that amount which is necessary to maintain the life beneficiary according to his or her normal standard of living before he or she became a beneficiary of the trust, *Woodberry* v. *Bunker, supra* at 243, the holding of *Merchants Nat'l Bank* is not determinative.

3. The plaintiffs and the United States are in agreement that, as a general rule, a trustee-beneficiary normally may

not participate in decisions regarding distributions of principal to himself. See G. Bogert, Trusts § 129 (2d ed. 1965). Such a general rule is consistent with the fiduciary principles expressed in *Worcester County Nat'l Bank* v. *King*, 359 Mass. 231, 233 (1971), and in *Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 9-10 (1967). See 2 A. Scott, Trusts § 170 (3d ed. 1967). The issue thus becomes whether the language of the trust expresses a contrary intent when examined in light of our established principles of construction. See, e.g., *Putnam* v. *Putnam*, 366 Mass. 261 (1974); *Old Colony Trust Co.* v. *Silliman, supra.*

The trust terms authorize the trustees "at any time that my said daughter may request, or without such request when the other Trustees may deem it advisable, to pay over to her . . . such amounts of the principal . . . as said Trustees may deem necessary or desirable." The I.R.S. argues that the only reasonable interpretation of the provision is that "said Trustees" refers to all trustees, including Gring. The plaintiffs concede that the language of the trust is susceptible of this construction, but contend that a contrary interpretation is possible, and should be favored in this case. We agree.

First, a conclusion that the words "said Trustees" refer only to the "other Trustees," and not to Gring, is consistent with the fiduciary concepts discussed above. Second, in that the distribution of trust principal to the trustee-beneficiary could only be made with the approval of the independent trustees, 3 A. Scott, Trusts § 194 (3d ed. 1967), a conclusion that Gring was entitled to participate in that decision would be of no practical advantage to her. Thus, a construction of this clause which finds that Gring was able to participate in such decisions would favor the tax authorities and no one else. The propriety of such a construction is not to be lightly presumed. "It would be a rare case in which . . . an ambiguity in a will should be resolved by attributing to the testator an intention which as a practical matter is likely to benefit the taxing authorities and no one else." *Putnam* v. *Putnam*, 366 Mass. 261, 271 (1974).

4. A final decree shall be entered in the Probate Court declaring that (1) article Fourteenth of the McQuesten will provided an objective, ascertainable standard limiting the trustees' discretion to distribute principal to Gring to the amount necessary to support her in accordance with her accustomed standard of living; and that (2) the trust provision in article Fourteenth, as properly construed, excludes Gring from participating in any decision with respect to the distribution of trust principal to her.

*So ordered.*