John C. BRANTINGHAM, Executor of the Estate of Beatrice F. Brantingham, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 80–1022.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1980.

Decided Oct. 8, 1980.

Lee Johnson, Minneapolis, Minn., for plaintiff–appellant.

Aaron P. Rosenfeld, Tax Division, Dept. of Justice, Washington, D. C., for defendant–appellee.

Before FAIRCHILD, Chief Circuit Judge, PELL, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The issue in this case is whether the Commissioner of Internal Revenue erroneously included a life estate in the amount of $294,577. in determining gross estate of Beatrice F. Brantingham upon her death.

C. Alan Brantingham died testate on March 25, 1954 in the State of Massachusetts. He was a resident of Massachusetts at that time, and his will was probated there. The will, which had been drawn seventeen years prior to his death, contained the following provision:

> "I hereby give, devise and bequeath unto my children, share and share alike, per stirpes, all of my property and estate of whatsoever kind or nature, now or hereafter acquired, subject, however, to the life use thereof, which I hereby give unto my wife, Beatrice F. Brantingham, and as such life user, my said wife shall have and is hereby given the uncontrolled right, power and authority to use and devote such of the corpus thereof from time to time as in her judgment is necessary for her maintenance, comfort and happiness."

Section 2056 of the Internal Revenue Code of 1954, 26 U.S.C. § 2056, provides for a marital deduction for certain interests passing to the spouse of the decedent. Interests eligible for the marital deduction are not included in the gross estate of the decedent, and are therefore not subject to estate tax. Interests which terminate after a lapse of time, including a life estate, do not qualify for the marital deduction. 26 U.S.C. § 2056(b)(1). There is an exception, however, for life estates in which the surviving spouse alone has the power to dispose of the entire estate "in all events". 26 U.S.C. § 2056(b)(5). Such life estates are eligible for the marital deduction. The Commissioner determined that the life estate devised to Beatrice Brantingham did not provide her with unlimited power of appointment, and therefore did not qualify for the deduction. Since Mrs. Brantingham could dispose of the principal of the life estate only for purposes of her "maintenance, comfort and happiness," she lacked the requisite control to qualify for the exception contained in 26 U.S.C. § 2056(b)(5).

On June 12, 1957, Beatrice Brantingham, now a resident of Illinois, petitioned the Circuit Court of Winnebago County, Illinois to be appointed trustee over the life estate left by her husband. She maintained the

* Senior District Judge William J. Campbell of the United States District Court of the North-  ern District of Illinois is sitting by designation.

corpus of the trust, never making distributions of principal for her use or enjoyment until her death on June 2, 1972.

John Brantingham, the executor of Beatrice Brantingham's estate, did not include the life estate in question as part of the decedent's gross estate on her federal estate tax return. The Commissioner determined that the life estate should be included and issued a notice of deficiency. The plaintiff–executor paid the assessed deficiency and filed a claim for a refund with the Internal Revenue Service. The claim was denied and plaintiff initiated this action in United States District Court for a refund in the amount of $101,078.81.

The Commissioner denied the taxpayer's claim that the corpus of the life estate was not includable in the decedent's gross estate. The defendant also counterclaimed in the District Court for $23,691.92 in interest due on the deficiency.

The Commissioner based the inclusion of the life estate in Beatrice Brantingham's gross estate on 26 U.S.C. § 2041, which provides that a decedent's gross estate shall include "... any property with respect to which the decedent has at the time of his death a general power of appointment." 26 U.S.C. § 2041(a)(2). The Commissioner reasoned that in allowing his widow to "devote such of the corpus ... as in her judgment is necessary for her maintenance, comfort and happiness," Alan Brantingham had given her a general power of appointment over the life estate in question. Thus, the Commissioner concluded, the corpus of the life estate was part of Beatrice Brantingham's gross estate, and was subject to estate tax again.

As is the case with any rule, and particularly those found in the Internal Revenue Code, there are exceptions. Property over which the decedent has a general power of appointment is not included in the decedent's gross estate if the power to dispose of that property is "limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent." 26 U.S.C. § 2041(b)(1)(A). Presumably, the theory behind this exception is that if the decedent has been constrained in the manner in which she may dispose of property during her lifetime, it should not be considered part of her estate at death.

Plaintiff did contend that the ascertainable standard exception applied in response to the government's motion for summary judgment in the District Court. The central theme of plaintiff's argument below, however, was that it was inequitable to tax the corpus of Beatrice Brantingham's life estate twice, and that this is a result which Congress never intended. Plaintiff argues that in qualifying as a trustee and maintaining the corpus of the life estate intact, Beatrice Brantingham was relying on the Commissioner's finding that her rights to invade the corpus were limited. This limited access to the corpus, the taxpayer contends, precludes inclusion of the life estate in Beatrice Brantingham's estate.

The District Court, on recommendation of the United States Magistrate, entered summary judgment for defendant as to both the taxpayer's claim for reimbursement and the government's counterclaim for interest due. We reverse.

The taxpayer initially presents two arguments on appeal. First, the taxpayer argues that Congress intended that Sections 2056 and 2041 be read as interdependent parts of a single statutory pattern. He contends that Congress did not intend that a property interest be included in the original testator's estate and again in the spouse's estate. The spouse either exercises a sufficient degree of control over an interest to qualify for the marital deduction, in which case the remaining portion of that interest would be included in her gross estate; or she lacks sufficient authority over the interest to qualify for the deduction and the interest will not be included in her gross estate. Since the marital deduction was disallowed at the time of Alan Brantingham's death, the life estate would not be included in his widow's estate under this theory. The second argument advanced by petitioner is that the government is estopped from including the life estate of Beatrice Brantingham's estate by the prior

inclusion of that interest in her husband's gross estate.

■ Were these the only arguments in support of the taxpayer, we would affirm the entry of summary judgment. While Sections 2056 and 2041 both discuss powers of appointment, there is nothing in either provision which suggests that they should be construed *in pari materia*. Nor is there any discussion in the legislative history which suggests such a result. While one District Court has interpreted the two code sections in the "either or" manner urged by the taxpayer,[1] that view has been rejected as well.[2] More importantly, however, in construing Section 2041 we may not look to other provisions of the Code when there is no suggestion that we do so, either in the language of the section under scrutiny or in the legislative history. *May's Estate v. Commissioner of Internal Revenue*, 283 F.2d 853, 855 (2d Cir. 1960).

■ The taxpayer's estoppel argument is similarly without merit. In order to assert estoppel against the Commissioner, there must be some reasonable reliance on the Commissioner's statements or actions. *Schuster v. Commissioner of Internal Revenue*, 312 F.2d 311 (9th Cir. 1962); *Joseph Eichelberger & Co. v. Commissioner of Internal Revenue*, 88 F.2d 874 (5th Cir., 1937). The taxpayer suggests that the Commissioner's ruling that the assets of the C. Alan Brantingham estate subject to the life–use by Beatrice Brantingham could not be allowed as a marital deduction to Alan's estate estops the Commissioner from including the life estate in Beatrice Brantingham's estate. Yet, the Commissioner's disallowance of the marital deduction simply stated:

"Your claim for refund is rejected in its entirety. Under the provisions of the decedent's Will, it does not appear that the surviving spouse had such right to consume property subject to her use as to qualify for the marital deduction."

There is nothing in this statement which even remotely suggests any disposition as to the inclusion of the life estate in Beatrice Brantingham's estate.

The taxpayer apparently elected not to pursue the argument that Beatrice Brantingham's power of appointment over the life estate is limited by an ascertainable standard. Government counsel, however, have brought the ascertainable standard exception to our attention in their brief.[3] We believe that Beatrice Brantingham's power to invade the corpus of the life estate is limited by an ascertainable standard, and that her interest in the corpus of that estate should not be included in her gross estate.

■ Section 2041 and similar provisions of the tax code designate which property interests are included in a decedent's estate and subject to Federal Estate Tax. Section 2041(b)(1)(A) excludes from Federal taxation interests in which the decedent's power of appointment is limited by an "ascertainable standard." The determination as to what legal rights and interests are created by a specific instrument is a question of state law. *Morgan v. Commissioner of Internal Revenue*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed.2d 585 (1940); *Gartland's Estate v. Commissioner of Internal Revenue*, 293 F.2d 575, 580 (7th Cir., 1961). Thus, to determine whether the life estate left to Beatrice Brantingham by her hus-

1. *Security–Peoples Trust Company v. United States*, 238 F.Supp. 40, 51 (W.D.Pa., 1965). Plaintiff also relies on *Pennsylvania Bank and Trust Co. v. United States*, 451 F.Supp. 1296 (W.D.Pa., 1978). In that case, however, the Court focused on the extent to which the word "exercisable" presumed the decedent's competency to dispose of assets. The Court did not make a finding as to how Sections 2056 and 2041 should be construed.

2. *Condon National Bank of Coffeyville, Kansas v. U. S.*, 349 F.Supp. 755, 760 (D.Kan.1972).

See also *Peoples Trust Company of Bergen County v. United States*, 412 F.2d 1156, 1162, n. 14 (3rd Cir. 1969).

3. The government points out in footnote 4 of their brief that Section 2041(b)(1)(A) excludes powers of invasion which are limited by an ascertainable standard from the definition of general power of appointment contained in Section 2041. The government contends the exception does not apply here.

band is subject to Federal taxation, we must look to state law.[4] *Keeter v. United States*, 461 F.2d 714, 717 (5th Cir., 1972); *Miller v. United States*, 387 F.2d 866, 868 (3rd Cir., 1968).

■ Alan Brantingham was a resident of Massachusetts at the time of his death. His estate was probated in Massachusetts. Accordingly, Massachusetts law defines all interest created in Alan Brantingham's will. The government urges that Beatrice Brantingham was granted virtually unlimited authority to dispose of the life estate, and therefore her power of appointment cannot be considered limited by any standard, much less an ascertainable one.[5] In support of that position, the Government relies on *Dana v. Dana*, 185 Mass. 156, 70 N.E. 49 (1904). In that case the Massachusetts Court interpreted a will which created a life estate in the decedent's widow. The widow had the power to sell and dispose of any or all of the principal at her pleasure and discretion with accountability to no one. The Court concluded that the widow received an interest which granted her a power of disposal in fee.

We cannot accept the Commissioner's contention that *Dana v. Dana* controls this case. First, that case did not interpret Massachusetts law for purposes of applying Federal tax law. Indeed, the case was written well before the enactment of a Federal tax code. Second, subsequent Massachusetts cases have undermined the holding in *Dana v. Dana*, particularly as it applies to the instant case.

Our review of Massachusetts law reveals that any interest to which the decedent places limitations on the spouse's power of appointment is considered by the Courts as a limited interest. In *Homans v. Foster*, 232 Mass. 4, 121 N.E. 417 (1919), a widower

inherited his wife's estate for life "with the full power to dispose of the whole or any part of said property . . . by deed or otherwise, if he may deem it conducive to his comfort so to do." 121 N.E. at 418. The Court construed the husband's life estate as a limited one. The Court noted that there were purposes for which the husband could not part with the property and that this was sufficient to construe his interest as a limited one.

In *Nunes v. Rogers*, 307 Mass. 438, 30 N.E.2d 259, 261 (1940), a widow took a life estate in her deceased husband's property "with power to sell, mortgage or otherwise dispose of so much . . . of [the] estate as in her judgment shall be necessary for her comfortable support and maintenance." 30 N.E.2d at 260. The Court found "the power of disposal was limited by its very terms and could be exercised for no other purpose than therein stated." 30 N.E.2d at 261.

We point to these cases simply to demonstrate that Massachusetts Courts have, even prior to the adoption of the tax code, viewed a life estate such as the one in the instant case as a limited interest. To the extent that *Dana v. Dana* is to the contrary, we can only conclude that it has not been adhered to.

Turning to more recent Massachusetts case law construing testamentary instruments for purposes of determining Federal tax liability, we conclude that Beatrice Brantingham's life estate was not only limited, but limited by an ascertainable standard as well. In *Pittsfield National Bank v. United States*, 181 F.Supp. 851 (D.Mass. 1960), the District Court interpreted a similar life estate for purposes of determining whether the taxpayer's right to invade principal was limited by an ascertainable standard. The decedent had the right to "all or

---

4. There is little dispute on this question. Indeed, the Government in its motion for summary judgment in the District Court stated: "Since Mr. Brantingham died a resident of Massachusetts, the law of that state governs the interpretation of the dispositive provisions of his will." Memorandum of the United States in Support of its Motion for Summary Judgment, at p. 5.

5. While we are not concerned with the Commissioner's disallowance of the marital deduction in the estate of Alan Brantingham, we note that this position appears to contradict the Commissioner's prior ruling.

such part of the principal of same as he may from time to time request, he to be the sole judge of his needs." The Court relied on the inclusion of the words "needs" in finding that the decedent's power to invade the principal of the life estate was limited by an ascertainable standard within the meaning of Section 2041(b)(1)(A). In *Woodberry v. Bunker*, 359 Mass. 239, 268 N.E.2d 841 (1971), the Court found that a trustee's power to dispose of principal for comfortable support, medical care "or other purposes which seem wise to my trustees" was a limited and enforceable standard. *Id.* at 844.

The Government seeks to distinguish these cases on the ground that right of invasion of principal is based on some notion of need, whereas in the present case invasion is permitted for the widow's "happiness." The prerequisites for invasion of corpus in these cases do not seem to differ significantly from the language of Beatrice Brantingham's life estate. Yet even assuming that "happiness" is so broad a term to distinguish the above cases, *Dana v. Gring*, 374 Mass. 109, 371 N.E.2d 755 (1971), resolves any doubt that the Massachusetts Courts would construe Beatrice Brantingham's power of invasion as limited by an ascertainable standard. In that case the trustees were authorized to invade principal as they deemed "necessary or desirable for the purpose of contributing to the reasonable welfare or happiness of [the settlor's] daughter or her immediate family." *Id.* at 759. While recognizing that happiness is a broad term the Massachusetts Court did not consider it evidence of intent to establish a trust for the decedent's daughter with fee simple powers. Rather, in looking at the entire instrument, the Court concluded that the settlor's intent was to preserve the principal of the fund for his lineal descendants alive at the time of his death. The Court found the trustee's right to distribute principal was limited by "an objective, ascertainable standard." *Id.* at 761.

The language found in Alan Brantingham's Will also reflects an intent to preserve the principal of his estate for his children. The first clause of the bequest provides: "I hereby give, devise and bequeath unto my children . . . all of my property and estate" . . . The testator then provided for the life use by his widow, with the power to invade principal as necessary for her maintenance, comfort and happiness. The bequest in the instant case is virtually indistinguishable from that in *Dana v. Gring*.

█ We conclude, as we believe that any Massachusetts Court would conclude, that Beatrice Brantingham's power to invade the principal of the life estate was limited by an ascertainable standard. The Massachusetts cases discussed herein leave no doubt that the Section 2041(b)(1)(A) exception to a general power of appointment applies, and that the corpus of the life estate was erroneously included in Beatrice Brantingham's gross estate. Since there is no dispute as to the facts of this case, we see no need for further fact finding in the Court below. Accordingly, the entry of summary judgment is Reversed and Remanded to the District Court with instructions to enter judgment for plaintiff in accordance with the views expressed herein.