ESTATE OF EVELYN B. LEVIN, IRVING M. LEVIN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Levin v. Commissioner
Docket No. 7497-79.
United States Tax Court
T.C. Memo 1981-170; 1981 Tax Ct. Memo LEXIS 572; 41 T.C.M. (CCH) 1240; T.C.M. (RIA) 81170; April 9, 1981. Arthur M. Lippman, for the petitioner. James A. Boyce, Jr., for the respondent. TANNENWALD
*573 MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $ 57,086.64 in petitioner's Federal estate taxes. The issues to be decided are (1) whether a testamentary disposition benefiting the decedent's spouse qualifies for the marital deduction under section 2056 [1] and (2) whether a half interest in securities brought into the marriage by the decedent or brought with the sale proceeds from such securities should be excluded from the gross estate as having been implicitly transferred to the decedent's spouse during marriage. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is the Estate of Evelyn B. Levin, deceased (Mrs. Levin), by its executor, Irving M. Levin (Mr. Levin). Mrs. Levin died testate on December 31, 1975, and an estate tax return was filed with the office of the district director of internal revenue at Boston, Mass. Mr. Levin resided in Needham, Mass., at the time he filed the petition in this case. Mr. and Mrs. Levin were married in *574 1961. Mrs. Levin was survived by her husband, her mother (Edna G. Boardman), her mother-in-law (Celia Levin, since deceased), and a child of Mr. Levin by a previous marriage. The marriage of Mr. and Mrs. Levin produced no children. Some time prior to 1960, Mrs. Levin inherited securities worth approximately $ 85,000. Mrs. Levin opened a custodial account (M62725-25) in her maiden name with the Manufacturers Hanover Trust Company, New York (the New York account), into which she deposited these securities. Mrs. Levin never changed the name of the New York account to reflect her subsequent marriage, nor did she authorize the Manufacturers Hanovedr Trust Company to release securities to Mr. Levin without her permission. Mr. and Mrs. Levin opened a joint account after their marriage with Shearson, Hammil & Co., Boston (the Boston account). This was a highly leveraged account used for securities speculation by the Levins. If they desired to trade a security kept in the New York account, Mrs. Levin would instruct the Manufacturers Hanover Trust Company to transfer it to the Boston account; if they desired to remove a security from that account, it would be transferred to the New *575 York account. [2] Mr. and Mrs. Levin exercised joint control over the Boston account, and they jointly made investment decisions including which stocks should be transferred from one account to the other. Mrs. Levin executed her will on February 18, 1972, and a codicial on June 22, 1972. As modified by the codicil, the will reads in pertinent part-- [3]
FOURTH: I give, devise and bequeath to my Trustee hereafter named, IN TRUST NEVERTHELESS, all of the property then held by the Manufacturers Hanover Trust Company * * * in custodial account M-62725 for the uses and purposes provided in Article SIXTH hereof. * * * FIFTH: I give, devise and bequeath all of the rest, residue and remainder of my Estate * * * to my husband, IRVING *576 M. LEVIN, if he survive me. SIXTH: In the event that my said husband, IRVING M. LEVIN, shall not have survived me, I give, devise and bequeath all of the rest, residue and remainder of my Estate * * * to my Trustee hereinafter named, IN TRUST NEVERTHELESS, who shall * * * pay, apply and distribute the same, together with the property received by my Trustee pursuant to Article FOURTH hereof, as follows: A. During the lifetimes of my husband, IRVING M. LEVIN, and my mother, EDNA G. BOARDMAN, my Trustee shall pay * * * such amounts of principal and such amounts of income as my Trustee shall, in his sole discretion, deem necessary to provide for their respective care, comfort, support and maintenance, and to defray the cost of medical emergency. B. After the death of my husband, and thereafter until her death, in addition to the distribution set forth in paragraph A of this Article SIXTH, my Trustee shall pay to or apply for the benefit of my mother-in-law CELIA LEVIN * * * such amounts * * * as my Trustee shall * * * deem necessary * * *. C. * * * D. Upon the death of the survivor of the said EDNA G. BOARDMAN, whether or not the said CELIA LEVIN be then living, I *577 direct my Trustee to pay over my then remaining Estate to my husband, IRVING M. LEVIN, free and discharged of this Trust if he shall be then living * * * and if he shall not be then living, upon the death of the survivor of the said EDNA G. BOARDMAN and CELIA LEVIN, I direct my Trustee to [distribute the remaining estate to seven specified persons]. SEVENTH: I nominate, constitute and appoint my husband IRVING M. LEVIN as Executor of my Will. * * * [Successor executors were named.] EIGHTH: I nominate, constitute and appoint my said husband, IRVING M. LEVIN, as Trustee of the Trust hereby created. * * * [Successor trustees were named.] Mr. Levin also executed a will on February 18, 1972. Both wills were drafted by the same lawyer, and they contained numerous similarities. Mr. Levin's will, however, did not refer to the New York account. The pertinent provisions of his will are as follows: FIFTH: I give * * * all of the restm residue and remainder of my Esrate * * * to my wife, EVELYN B. LEVIN, if she survives me by sixty (60) days. SIXTH: In the event that my said wife EVELYN B. LEVIN shall not have survived me by sixty (60) days, I give * * * *578 the rest * * * of my Estate * * * to my Trustee hereinafter named, IN TRUST NEVERTHELESS, who shall * * * distribute the same as follows: A. My trustee shall pay to or apply for the benefit of my mother-in-law, EDNA G. BOARDMAN * * * such amounts of principal and such amounts of income as my Trustee shall * * * deem necessary * * *. B. My Trustee shall pay to or apply for the benefit of my mother, CELIA LEVIN * * * such amounts of principal and such amounts of income as my Trustee shall * * * deem necessary * * *. C. * * * D. Upon the death of the survivor of the said EDNA G. BOARDMAN and CELIA LEVIN, I direct my Trustee to [distribute the remaining estate to seven specified persons]. SEVENTH: I nominate * * * my wife EVELYN B. LEVIN as Executrix of my Will. * * * [Successor executors were named.] EIGHTH: I nominate * * * my said brother, DANIEL T. LEVIN, as Trustee of the Trust hereby created. [Successor trustees were named.] Both Mr. and Mrs. Levin intended that their testamentary disposition provide security for their mothers and one another. Each red his/her will before signing it. The will and codicil of Mrs. Levin were filed with the Massachusetts *579 Probate Court, and Mr. Levin has not sought to challenge, modify, or reform it. On the Levins' joint Fededral income tax return for the year 1975, the securities held in the New York account are indicated as belonging solely to Mrs. Levin, and the estate tax return reflects the same ownership. OPINION The first issue is the extent to which the bequests to Mr. Levin under Mrs. Levin's will and codicil (the will) qualify for the marital deduction provided by section 2056. Petitioner argues that Article SIXTH of Mrs. Levin's will, which provides for a trust, did not become operative because it is conditioned upon Mr. Levin having predeceased Mrs. Levin (an event which did not occur), that the trust of the New York account provided for in Article FOURTH was subject to the same inoperative condition, and that consequently the New York account passed to Mr. Levin as part of the rest, residue, and remainder left to him outright by virtue of Article FIFTH and thereby qualifies for the marital deduction. Petitioner bases his argument on the contention that the survivorship provision in Article SIXTH creates an inconsistency and therefore an ambiguity with respect to the New York account *580 which is resolved by Mr. Levin's testimony (admitted over respondent's objection) to the effect that Mrs. Levin intended that the New York account pass outright to Mr. Levin. Respondent recognizes the fact that Article FIFTH provides for an outright bequest to Mr. Levin of the rest, residue, and remainder of Mrs. Levin's estate but argues that, since Article SECOND of Mrs. Levin's will provides that all estate and inheritance taxes are to be paid out of the residuary estate (see note 3 supra) and since those taxes exceed the value of the residuary estate exclusive of the New York account (a calculation with respect to which petitioner does not appear to disagree), the issue as to the marital deduction revolves around the proper treatment of the New York account, which he contends does not qualify for that deduction. [4] We agree with respondent that the New York account does not qualify for the marital deduction. The parties have indulged in extensive arguments on brief as to the impact of the survivorship clause in Article *581 SIXTH in the context of whether or not it creates an inconsistency or ambiguity. We think that most of their arguments are irrelevant. To us, Mrs. Levin's will is consistent and unambiguous. Article FOURTH clearly establishes a trust of the New York account. [5] To be sure, it establishes that trust for the "uses and purposes provided in Article SIXTH," but this reference does not make it subject to the survivorship clause of the latter Article as a condition for the trust coming into effect; it merely provides for the manner in which the trust established by the former Article is to be operated. [6] Having established the trust by Article FOURTH, Mrs. Levin's will goes on to leave the rest, residue, and remainder of her property outright to Mr. Levin. Her entire estate thus disposed of, Mrs. Levin's will proceeds to deal with how her property (previously disposed of by Articles FOURTH and FIFTH) should be handled in the event that Mr. Levin predeceases her. *582 We think the sequence of dispositions leaves no room for interpretation. Petitioner's argument that we should read the will as bequeathing outright to Mr. Levin everything (including the New York account) but the property covered by the specific bequests simply does too much violence to the language of the will. The will of Mr. Levin reinforces our view. This will was drafted by the same lawyer who drafted Mrs. Levin's will, and at the same time. The two wills were executed simultaneously, and plainly reflect a jointly conceived plan of disposition. Yet, the will of Mr. Levin has no difficulty in saying that a trust should only arise if the testator survives his spouse, and it correctly appoints a trustee other than one assumed by the creation of the trust to be deceased. In short, if Mrs. Levin had desired to give the New York account outright to her husband if he survived her, and to put it in trust only if he did not, the attorney who drafted her will knew what to write and presumably would have done so. Mrs. Levin's will refers to the New York account, while Mr. Levin's does not. More importantly, it is the securities in this account, securities brought into the marriage *583 and retained in Mrs. Levin's maiden name, which are unconditionally placed in trust. Given the joint concern of Mr. and Mrs. Levin to provide for their mothers and the substantial similarity of the wills, we think that Mrs. Levin intended that her interest [7] in the New York account should go into trust unconditionally and that the rest of her estate should be distributed in substantially the same manner as provided for in Mr. Levin's will. Under the foregoing circumstances, we think that Mr. Levin's testimony as to his wife's intent probably should not have been admitted into evidence on the ground that it could not properly serve to qualify the clear language of Mrs. Levin's will. Gustafson v. Svenson, 373 Mass. 273, 366 N.E. 2d 761 (1977).[8] However, even if we give the petitioner the benefit of any doubt on this score and assume that Mrs. Levin's will reflected inconsistent provisions and was therefore ambiguous, petitioner could not prevail. Under such circumstances, we would reach the same conclusion, i.e., that a trust of the New York account was created by Article FORTH of *584 Mrs. Levin's will, on the ground that, where there are inconsistent provisions in a will, we should choose the construction which best expresses the testator's intent at the time of its execution and in light of the facts known to the testator at that time. Putnam v. Putnam, 366 Mass. 261, 316 N.E. 2d 729 (1974); cf. Cape Cod Bank & Trust Co. v. Cape Cod Hospital, 3 Mass. App. 279, 327 N.E. 2d 902 (1975). Mr. Levin's testimony was patently self-serving and totally uncorroborated. We accept the fact that Mrs. Levin desired that her husband, mother, and mother-in-law should be provided for and that Mr. Levin should have substantial control over the assets in her estate, but this does not resolve the issue: both an outright gift and a gift in trust can adequately provide for loved ones and retain flexibility. Briggs v. Crowley, 352 Mass. 194, 224 N.E. 2d 417 (1967). Insofar as Mr. Levin has testified that Mrs. Levin desired to leave her entire estate to him so long as *585 he survived her, we find his tetimony refuted by the clear language of the will. The conclusion that the New York account was subject to a trust rather than passing outright to Mr. Levin causes that account not to qualify for the marital deduction. The provisions governing the operations of the trust set forth in Article SIXTH of Mrs. Levin's will clearly gave Mr. Levin only a disqualifying terminable interest under section 2056(b) and, indeed, petitioner does not contend otherwise. To be sure, Mr. Levin's life interest was coupled with a power as trustee to distribute such amounts of income and principal to himself and his mother-in-law (Article SIXTH A) as he "in his sole discretion, deem[s] necessary to provide for their respective care, comfort, support and maintenance and to defray the cost of medical emergency." Although the power is broad, it is far from unfettered and, under Massachusetts law, Mr. Levin would be held to standards of a fiduciary and to act with prudence and not unreasonably. Briggs v. Crowley, supra; Woodberry v. Bunker, 359 Mass. 239, 268 N.E. 2d 841 (1971); Old Colony Trust Co. v. Rodd, 356 Mass. 584, 254 N.E. 2d 886 (1970); *586 Holyoke Nat. Bank v. Wilson, 350 Mass. 223, 214 N.E. 2d 42 (1966); 3 A. Scott, Trusts sec. 187.2, at 1514 (3d ed. 1967); cf. Restatement, Trusts 2d, sec. 187 (1959). See also Estate Tax Regs., sec. 20.2056(b)-5(e). Accordingly, Mr. Levin has neither "that degree of beneficial enjoyment of the trust property * * * accord[ed] to a person who is unqualifiedly designated as the life beneficiary of a trust" nor a power of appointment devoid of "restrictions, either by the terms of the instrument or under applicable local law," and so the trust corpus falls outside the boundaries of section 2056(b)(5). Sections 20.2056(b)-5(f)(1), 20.2056(b)-5(g)(3), Estate Tax Regs. The second issue is the extent of Mrs. Levin's interest in the New York account. Petitioner argues that Mrs. Levin conveyed a half interest in the account to him, that as a consequence they were were partners as to that account, and that therefore Mr. Levin possessed and still possesses a one-half interest in the account. Whether Mrs. Levin conveyed a half interest in the New York account to Mr. Levin is a question of fact, and the burden of proof is upon the *587 petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure.[9] Petitioner concedes that no written document of conveyance or written partnership agreement was ever prepared, much less executed, and no probative evidence was produced establishing that Mrs. Levin orally conveyed any interest in the New York account. No partnership return nor gift tax return was filed, and, on the Levins' jointly signed Federal income tax return for 1975 as well as on the estate tax return, Mrs. Levin is listed as the sole owner of the securities in the New York account. That account was at all times kept in Mrs. Levin's maiden name and was under her exclusive control. The securities were inherited by Mrs. Levin before her marriage and were specifically bequeathed in her last will. Mr. Levin's will makes no mention of the New York account. In short, all the tangible indicia of ownership point directly and solely towards Mrs. Levin. *588 Petitioner's position rests on three facts: (1) Securities were freely traded from the Levins' jointly owned Boston account to the New York account; (2) the Levins jointly made their investment decisions; (3) as husband and wife, the Levins thought of themselves and acted as equal partners in their day-to-day activities. We find these three facts wholly insufficient to support petitioner's contention. That securities were transferred from the New York account to the Boston account offers petitioner little sustenance. No evidence was presented which rebuts the natural inference from the facts of record that securities were only transferred out of the New York account with the understanding that other securities would be transferred in, and no evidence was produced showing whether the transfers between the two accounts produced a net gain or loss to the New York account. As far as this record reveals, securities from the New York account were only transferred to the Boston account to facilitate sale and the sale proceeds were usually, if not always, reinvested in securities then sent to the New York account.Moreover, that the New York account might have enriched at the expense *589 of the joint Boston account (had that been established to be true) would only show that gifts might have been made by Mr. Levin to Mrs. Levin, an explanation which does not help Mr. Levin's cause. Even the testimony of Mr. Levin, an interested party the weight of whose testimony is questionable because of its patently self-serving nature, sheds little light on this area. We must conclude that petitioner has wholly failed to prove that the investment conduct of the Levins operated as a tacit conveyance to Mr. Levin of any part of Mrs. Levin's interest in the New York account. To be sure, the Levins treated themselves as equals in a marriage partnership, but that does not imply that they became joint owners of all their property. Massachusetts law specifically provides that property brought into a marriage by one spouse remains the separate property of that spouse. Ann. Laws of Mass. ch. 209, sec. 1 (Michie Law Co-op 1969). Husband and wife can convey property interests between themselves as validly as can strangers, Ann. Laws of Mass., supra, sec. 3, but, in the case at bar, petitioner has failed to establish any such conveyance. We accept petitioner's contention that the *590 Levins acted jointly and with high regard for each other's best interests, but that does not effect a transfer of property. In addition, Mrs. Levin's specific bequest in trust of the New York account in her will strongly undercuts Mr. Levin's testimony that the parties themselves viewed themselves as co-owners of the New York account. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of the decedent's death.↩
2. In fact, the transfers took a more circuitous route through a third account in Boston held in Mrs. Levin's maiden name. For simplicity, we will disregard this intermediate account.↩
3. Article SECOND provides that all estate, succession, legacy, or inheritance taxes are to be paid out of the residuary estate and Article THIRD bequeaths to Mr. Levin all of Mrs. Levin's tangible personal property not otherwise specifically bequeathed.↩
4. Respondent concedes that any property transferred by virtue of Article THIRD of the will, see note 3 supra↩, qualifies for the marital deduction.
5. We note that the account is specifically referred to in Article FOURTH by its account number. ↩
6. deed, the appointment of Mr. Levin as trustee reinforces the conclusion that Article FOURTH intended to have independent operative effect.↩
7. As to Mrs. Levin's interest in that account, see pp. 12-15, infra↩.
8. Any interpretation of a will which we may be called upon to make is a matter of state law. McMillan v. Commissioner↩, 76 T.C.     (Jan. 29, 1981).
9. Petitioner requested on brief that we hold against respondent as to any increased deficiency. No increase in deficiency was ever asserted by respondent. See generally section 6211; Kurtzon v. Commissioner, 17 T.C. 1542, 1546-1548↩ (1952).